JUDGE COFER
DELIVERED THE OPINION OP THE COURT.
Section 340 of the Criminal Code (Bullitt’s) provides, that “A judgment of conviction shall be reversed for any error of law to the defendant’s prejudice appearing on the record.” But sections 280 and 281 provide, that decisions of the court upon challenges to the panel, and for cause, upon motions to set aside an indictment, and upon motions for a hew trial, shall not be subject to exceptions; and in Terrell’s case (13 Bush, 246) we held, that as no exception could be taken to the decisions above enumerated, this court had no jurisdiction to inquire *610 into alleged errors therein. We are therefore of the opinion that we have no jurisdiction to revise the action of the circuit court in respect to the appellant’s challenges for cause.
Evidence of the declarations made by the appellant at the time he surrendered himself to the justice was not competent. The killing occurred eight or nine miles from Russellville, and the appellant rode to town on horseback, and there surrendered himself from one to three hours after the act was committed. This was ample time in which to concoct a story; and what he said was not so connected with the act for which he was being tried as to make his declarations a part of the res gestee. Counsel argue, however,- that he had a right to prove that he voluntarily surrendered himself to the officers of the law, and that his statements made at the time of surrendering were admissible as a part of that act. That position is not tenable. Declarations made at the time of doing an act, in order to be admissible as a part of the act, must relate to the act being done when the declarations are made, and must tend in some way to explain or qualify that act. No declarations of the appellant, made at the time of surrendering himself into custody, several hours after the homicide was committed, could be admitted to prove the circumstances under which the deceased was killed. They were no part of that act, but accompanied an entirely different act.
It was competent to prove that the deceased had threatened to kill appellant’s mother. The witness had stated that amicable relations existed between the two families up to the time the homicide was committed. That statement was material as tending to prove that the killing was unprovoked, and that the appellant was under no just apprehension of danger; and as also tending to contradict the testimony of the appellant’s witness in regard to threats made by deceased against his life. If the deceased had threatened the life of appellant’s mother, that fact would be inconsistent with the statement that the *611 families were on amicable terms with each other, and would, to some extent, weaken the force of the witness’s testimony.
No one saw, or professed to have seen, both the deceased and the appellant at the moment when the shooting was done, or for some moments before. And the evidence was conflicting as to whether Alonzo Wheeler saw the appellant when he fired either shot. That witness swore he did see him, but could not see the deceased. There was some evidence conducing to prove that he swore on the examining trial that- he stood in the corner of the garden when the shots were fired, and he swore on the final trial that he stood at a different place. But whether he stood at the one place or the other, the jury may have found that he did not see the appellant at the time he fired either shot, and must have found that he did not see the deceased, for he so stated.
Then we have a case where the jury must have found that no witness introduced before them saw one of the parties, and may have found that no one saw either of them for some moments before they met and until after the killing had occurred.
In that case the facts attending the killing must be ascertained wholly from circumstances.
The homicide may then have been excusable self-defense, manslaughter, or murder. The facts attending the killing must be ascertained in order to ascertain to which category the killing belongs. It is the province of the jury to ascertain these facts, and the court erred in refusing to instruct in the law of manslaughter. In doing so the court took upon itself to decide that no facts existed which could reduce the killing to manslaughter. That action, as stated by the learned judge, was based on the ground that there was no evidence whatever “ going to show that the killing was done in sudden heat and passion,” and therefore an instruction as to the law of manslaughter would be abstract and misleading.
The same reasoning would equally apply to an instruction *612 in regard to the law of self-defense, and .the instruction given on that subject might have been refused with equal propriety. If the jury had a right "from the circumstances in evidence before them to inquire whether the killing was done in self-defense, they had an equal right to inquire whether it was not done under circumstances which made it manslaughter..
When no witness introduced on the trial saw the homicide committed, or saw the parties after they met on the occasion when the killing occurred, the law applicable to murder, manslaughter, and self-defense should be given, in order to meet any state of fact the jury may find, from the circumstances in evidence, to have existed.
Judgment reversed, and cause remanded for a new trial upon principles not inconsistent with this opinion.