CASE 54—INDICTMENT—DECEMBER 5.

# O'Brien v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. CONTINUANCE.—The defendant in a criminal case can not demand a continuance because of the absence of witnesses where the Commonwealth admits the truth of the facts which the affidavit for a continuance states that the absent witnesses would prove.

O'Brien v. Commonwealth.

2. REVERSIBLE ERRORS.—There can be no reversal for an error of the lower court in acting upon a challenge to a juror for cause.

3. ERROR FOR ATTORNEY TO READ WRITING IN OPENING STATEMENT TO JURY.—The attorney for the Commonwealth should not be allowed, in his opening statement to the jury, to read writings which he subsequently intends to offer as evidence; but where the writings are subsequently offered in evidence, the action of the attorney in reading them to the jury will not be ground for reversal, provided they were competent as evidence.

4. EVIDENCE TO SHOW MOTIVE FOR CRIME.—Where circumstantial evidence has to be relied upon in a criminal case, any fact which is necessary to introduce or explain another, or which afforded an opportunity for any transaction which is in issue, or shows facilities or motives for the commission of the crime, may be proved.

Upon the trial of the appellant for murder, notes written by him to the deceased, to whom he had been secretly married, were competent for the purpose of showing the relations existing between them, and letters written by the accused to other women which showed the existence of a relation between them and the accused which might be broken off or interfered with by his marriage to the deceased becoming public, were competent as exhibiting a motive upon the part of the accused for ridding himself of his wife and their unborn child.

5. HOMICIDE—INSTRUCTIONS TO JURY.—As there was no evidence whatever tending to show that the killing was the result of passion or sudden quarrel, the court properly refused to instruct as to manslaughter.

6. SAME.—It was proper for the court, in its instruction as to murder, to define that crime.

7. FAILURE TO OBJECT TO STATEMENTS OF ATTORNEY IN ARGUMENT.— This court can not consider objectionable statements made by the attorney for the State in his argument to the jury, as no objection was then taken to them.

8. EVIDENCE AS TO BUSINESS ACCUSED WAS ENGAGED IN.—If improper to prove what business accused was following at the time of the murder, it was not so prejudicial as to authorize a reversal.

9. PART OF A STATEMENT BEING PROVED BY DEFENDANT, PROPER FOR COMMONWEALTH TO PROVE REMAINDER OF STATEMENT.—The fact that the accused had once killed a man being brought out by the Commonwealth asking upon cross-examination for the remainder of a statement by a party, a portion of which the defense had already put in evidence by the main examination, the defendant can not complain.

10. TIME FOR PRONOUNCING SENTENCE IN FELONY CASE—COMPUTATION OF TIME.—The section of the Code which provides that in felony

O'Brien v. Commonwealth.

cases the court shall not pronounce judgment until two days after
the verdict is rendered, means juridical days, and Sunday should not
be counted; but the day of the rendition of the verdict should be
counted as one of the two days.

Appellant was convicted on Saturday, and sentenced on the follow-
ing Monday. *Held*—That he should not have been sentenced before
Tuesday, unless the court was about to adjourn for the term.

11. PREJUDICIAL ERRORS.—The error in pronouncing judgment sooner
than was authorized by the Code was not prejudicial, as the defend-
ant's motion in arrest of judgment and for a new trial had been made
and overruled before judgment was pronounced.

WATTS PARKER, E. P. FARRELL FOR APPELLANT.

1. It was error to allow the attorney for the Commonwealth, in his
opening statement to the jury, to read letters which he expected to
introduce in evidence. This statement should be limited to a concise
statement of the nature of the charge, and the law and evidence upon
which the Commonwealth relies. (Criminal Code, sec. 220.)

It was also error to allow the attorney for the Commonwealth to
comment upon the failure of defendant to testify at the examining
trial, and this error was not cured by the warning of the court to
the jury not to consider the statement of the attorney. (Cook v.
Commonwealth, 86 Ky., 663.)

2. It was not competent for the Commonwealth to prove that defendant
kept a poker room, and that he had been treated for the gonorrhea.
This testimony threw no light upon the issue, and must have preju-
diced the defendant's case.

3. The court erred in allowing a witness to state that defendant had once
killed a man, and in allowing the attorney for the Commonwealth, in
his argument to the jury, to comment upon that fact, and also upon
facts entirely outside of the record.

4. This court will not speculate as to the effect an error may have pro-
duced. It is enough that errors appear which may have been preju-
dicial. (Allen v. Commonwealth, 86 Ky., 646 )

5. The court erred in refusing to give an instruction as to manslaughter.
This refusal was equivalent to a finding by the court that the killing
was done maliciously, whereas malice is a question of fact for the
jury. (Brady v. Commonwealth, 11 Bush, 285; Farris v. Common-
wealth, 14 Bush, 362; Rutherford v. Commonwealth, 13 Bush, 608.)

A simple plea of guilty puts in issue every fact necessary to make
out the plaintiff's case. Each item of the charge must be proved in
the same manner as if the whole issue rested on it. (Wharton's
Criminal Law, sec. 707; Payne v. Commonwealth, 1 Met., 575.)

6. The instruction of the court is objectionable in that it fails to say to
the jury of what crime they should find defendant guilty.

7. The defendant having been convicted Saturday afternoon, it was error to sentence him on Monday morning. Section 283 of the Criminal Code contemplates *juridical* days, and yet not one juridical day intervened in this case between the verdict and the sentence. (Bush v. Commonwealth, 80 Ky., 244; Long v. Hughes, 1 Duv., 387.)

8. Upon a charge of wife murder, acts of adultery alone on the part of the husband are not competent evidence. (Shaffner v. Commonwealth, 13 Am. Rep., 647.)

JAMES H. MULLIGAN OF COUNSEL ON SAME SIDE.

P. W. HARDIN, ATTORNEY-GENERAL, AND CHARLES J. BRONSTON FOR APPELLEE.

No brief in record.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Bettie Shea was a servant girl of good character. She occupied a room over the kitchen, while the family of her employer slept in a remote part of the house. She was last seen alive by them upon the afternoon of Sunday, March 31, 1889. Early the next morning they found her dead body lying upon the floor of her room, partially disrobed, as if she were about retiring when cruel and murderous blows, one upon the other, and, from appearances, from six to fifteen in number, made with some blunt instrument, crushed in her skull, and made some one the murderer of a helpless woman.

We may presume at the outset that the killing was not for gain, as nothing of value was taken. She doubtless had little to tempt in this direction.

It was done between eight o'clock at night and four o'clock of the next morning. The mantle of darkness hid the doer. Under its cover a deed of blood was done so horrifying in character as to be almost nameless. As the witches said to Macbeth of King Duncan's murder—"a deed without a name."

The family heard no noise, and knew nothing of it until morning.   This is accounted for by the fact that the room of the victim was isolated, the entrance to it being by a side door.   Moreover, the wind and storm prevailing made it a fit night for such a deed.

The appellant, Thomas O'Brien, Jr., has been found guilty of it, and his punishment fixed at death.   The evidence is altogether circumstantial, but a jury of his vicinage has passed upon it, and found he did it beyond a reasonable doubt.   In our opinion it points unmistakably to him, and fully sustains the verdict. Moreover, his motive is clearly shown, and a careful reading of the record is not only convincing of his guilt, but points in no degree, even to the extent of suspicion, to any other person as the guilty party.

The deceased was not only his third cousin, but his wife.   They had been secretly married under assumed names in October, 1888, and at the time of her death she was *enceinte* by him.   He had been in the habit of privately visiting her as her husband from the time of their marriage, but it had been kept a secret.   In the meantime he had not only become intimate with a prostitute, but had engaged himself to marry an Indiana girl in May, 1889.

When the deceased was killed, the appellant knew from her condition that their marriage could not be much longer concealed.   He also knew that the time when he had promised to marry the Indiana girl was fast approaching.   He may also have thought that publicity of his marriage, and which, he testifies, he believed to be valid, might interfere with his rela-

tions with the prostitute. Reason existed, therefore, why he should desire to rid himself of the deceased. Motive was not wanting.

Before his marriage, and in June, 1888, he told one party that he was courting a girl, and she would not submit to his desires. In January following he told the same person that the girl was with child by him, and asked how to get rid of it, saying he had to do so or marry the girl, and he did not intend to do the latter if he had to get rid of both. He also told another party of the girl's condition, and that he wished to get rid of the child. In February he applied to a physician for this purpose, telling him that the girl was the deceased, but a few days afterward told him that she did not claim he was the father, and he was going to let it rest. In the pocket of the dress which the deceased had evidently worn the day preceding her death was found an undated note from the appellant, saying: "Will be up to-night as soon as possible." He was arrested the day succeeding the killing, and upon the next day there was found in a bureau drawer in the room where he had been arrested a metallic knuck, calculated to make such wounds as were found upon the head of the deceased, if one could be found cruel enough to do so. There was a red shade upon it, but no microscopical examination was had to determine certainly whether it was blood or other substance.

A witness says she saw the appellant talking with a woman at the gate of the house where the deceased lived at about eight o'clock upon the night of the killing. She did not know the woman, but from her

description of her dress, it was the deceased. Two
witnesses testify that the appellant said, when told
upon the day of his arrest that it was for killing
Bettie Shea, "I was with the girl last night, but I
did not do it."

These, and other circumstances to which we might
allude, banish all doubt of the appellant's guilt. His
evidence as to an *alibi* is faulty. He fails to account,
by any witness whatever, where he was for at least
an hour upon the night of the killing. This would
have afforded him ample opportunity to have done it.
Moreover, allowing that all of his witnesses are credi-
ble, yet they can very readily be mistaken as to the
time when and for how long they saw him upon the
fatal night.

It matters not, however, how guilty the appellant
may be, nor how great the crime, he is still entitled
to a trial according to law. His life can not be other-
wise taken. It is one of the highest and most sacred
duties of this court to see that every person charged
with crime, however heinous, is thus tried, although
·by so doing it may subject itself, for the time being··
at least, to public censure and popular disapproval.
Any other course would endanger the life and liberty
of every one; bring discord and anarchy, and destroy
that confidence with which the citizen appeals to the·
judiciary, even in times of popular excitement and·
violence, for the protection of his rights. We deem
it unnecessary to notice all the grounds relied upon
for a reversal.

Upon the hearing of the motion for a continuance,
the State consented that the statement contained in the

affidavit of what an absent witness, if present, would prove, might be taken as true, and so read to the jury. It was decided by this court, in Pace v. Commonwealth, *ante*, 204, that this was all a defendant could demand.

The appellant can not rely in this court upon any error of the lower court in acting upon a challenge to a juror for cause. Section 281 of the Criminal Code forbids it.

Complaint is made that the attorney for the Commonwealth, in his opening statement to the jury, said, in substance, that neither the accused nor his counsel opened their mouths at the examining trial to tell who did kill Bettie Shea, if the accused did not, meaning, as is claimed, that the appellant did not then testify. We hardly think the statement admits of this construction; but, in any event, the court expressly excluded its consideration in this light by the jury.

The attorney, in his opening statement, also read to the jury some notes written by the appellant to the deceased, and also the correspondence between the accused and the Indiana girl whom he had promised to marry, and the prostitute already named. This was improper. Section 220 of the Criminal Code provides: "The attorney for the Commonwealth may then state to the jury the nature of the charge against the defendant, and the law and evidence upon which he relies in support of it." This should not be construed to authorize him to read to the jury writings which he subsequently intends to offer as evidence. It would give the State an undue advantage. When offered, the court might rule them incompetent as testimony,

or the State's attorney might finally conclude not to offer them; and yet it would be difficult to efface the probable impression from the minds of the jurymen. They should not be read to the jury until regularly offered, and shown to be competent as evidence. The statement to be made to the jury is that of the attorney, based only upon his word as to the law and evidence of the case. Where, however, the writings are subsequently offered in evidence, this action of the attorney for the State would not be ground for reversal, provided they were competent as evidence; and this brings us to the consideration of the two principal questions involved in this appeal: first, were the letters competent? second, should an instruction as to manslaughter have been given to the jury?

Necessarily, where the commission of crime can be shown only by proof of circumstances, the evidence should be allowed to take a wide range, otherwise the guilty would often go unpunished. It is true there must be some connection between the fact to be proven and the circumstances offered in support of it, yet any fact which is necessary to introduce or explain another, or which afforded an opportunity for any transaction which is in issue, or shows facilities or motives for the commission of the crime, may be proven. Even evidence tending to prove a distinct offense is, therefore, admissible, if it shows facilities or motives for the commission of the one in question. The purpose is to weave a net about the guilty, and often this can no more be done by proof of a single circumstance than the building of a house with a single brick.

The notes written by the accused to the deceased were certainly competent evidence, if for no other reason than that they showed the relations existing between them. The correspondence between the accused and the other two women was, we think, equally admissible. Some of the letters of the accused to the prostitute contained statements which might fairly be considered by the jury as referring to the killing of the deceased, and facts connected therewith.

But all of them, including the correspondence with the Indiana girl, showed the existence of a relation between the accused and these two women which might be broken off or interfered with by his marriage to the deceased becoming public. They exhibited a motive why he should desire to rid himself of his wife and their unborn offspring. The correspondence with the Indiana girl shows that he had engaged to marry her in May, 1889, and this he knew he could not do safely with a living wife.

The jury were properly instructed as to murder. The court refused to give any instruction as to manslaughter. It is not the duty of the court, in every case of homicide, to instruct as to both murder and manslaughter.

Instructions must be based upon the evidence, and given to suit the case in hand.

In this instance the accused was denying the killing altogether. He testifies that he did not do it. Waiving this fact, however, and conceding that the plea of "not guilty" authorized him to rely upon every ground of defense, and entitled him, if the evidence authorized it, to an instruction based upon the idea

that if he did kill the deceased, yet, if done in sudden passion, he was only guilty of manslaughter, yet he is a man, and she was a weak, defenseless woman. Motives are shown upon his part for killing her. Preparation with an adequate weapon was made. The killing was secret in character, and neither the clothing nor person of the accused showed the least mark of any struggle.

It is evident her death resulted from a previously formed purpose to kill her. There is not only no evidence tending to show that it was the result of passion or sudden quarrel, but the entire testimony is utterly in conflict with such a supposition. It can not reasonably be so supposed.

No instruction as to manslaughter should, therefore, have been given, and it was proper for the court, in its instruction as to murder, to define that crime.

Under the instructions, if the jury did not find the accused guilty, beyond a reasonable doubt, of murder, they were bound to acquit him altogether. It is urged they were, therefore, authorized to acquit him, although he might be a felon by being guilty of manslaughter. Not so, because, as we have already seen, it was murder or nothing. Certainly this objection would not lie in the case of a secret killing from ambush.

We can not consider the point, now for the first time made, that the attorney for the State referred, in his argument to the jury, to certain matters which were not in evidence. No objection was then taken to it, and this was necessary to our consideration of the question.

If improper to prove what business the accused was

following at the time of the murder, certainly it was not sufficiently prejudicial to authorize a reversal; and the fact that he had once killed a man was brought out by the Commonwealth asking, upon cross-examination, for the remainder of a statement by a party, a portion of which the defense had already put in evidence by the main examination.

The appellant was convicted on Saturday, and sentenced on the following Monday.

The Criminal Code, section 283, provides: "Upon verdicts of conviction in cases of felony, the court shall not pronounce judgment until two days after the verdict is rendered, unless the court be about to adjourn for the term."

This means juridical days, and Sunday should not be counted. The day of the rendition of the verdict is to be counted as one of the two days, because the time is to be counted from the performance of that act; but as it says the judgment shall not be pronounced until two days thereafter, the appellant should not have been sentenced before Tuesday, unless the court was about to adjourn for the term.

The appellant's motions in arrest of judgment and for a new trial had, however, been made and overruled before judgment was pronounced, and further delay could in no way have been beneficial to him. It was not, therefore, a prejudicial error.

Complaint is made that the appellant did not have a fair trial; that throughout he was dealt with unfairly, and that the verdict is the result of prejudice and the indignation of the community.

Undoubtedly, the public were aroused by the horror

of the crime. It would have been strange had this not been so, for dismal as was the night when the deed was done, it made the night darker.

No change of venue was asked, however. A jury was obtained without the accused exhausting all of his peremptory challenges, and he has been defended by able counsel, who, as this record shows, have done all within their power which was honorable to save the life of a doomed man. The record fails to disclose that a fair trial was not afforded him. He has been found guilty of a crime committed for reasons which seldom prompt to murder in our State. Unfortunately, lives are taken within our border through sudden passion or from a false notion of what true honor and courage demand, but it can be said to our credit that it is done but seldom from motives of gain, or such as actuated the accused when, instead of being a protector, as he had promised, he, with the night winds mocking her cries, cruelly and brutally took the life of Bettie Shea and her unborn child.

Judgment affirmed.