CASE 95.—PROSECUTION AGAINST JAMES. BAST FOR MUR-
DER.—February 27.

# Bast v. Commonwealth

Appeal from Anderson Circuit Court.

R. F. Peak, Circuit Judge.

Defendant convicted of murder and appeals. Af-
firmed.

1. Criminal Law—Instructions—Principals and Accessories.—
   Where accused was charged as principal and the court
   directed the jury to find him guilty as a principal or to acquit
   him, the court did not err in failing to give a peremptory
   instruction in his favor because the proof showed that, if
   guilty at all, it was as an accessory before the fact.
2. Same—Insanity—Homicide.—Where the plans laid by accused
   and another for the murder of deceased showed conclusively
   that he was not a man of insane mind, and that he fully
   realized that the act he was about to commit was wrong,
   the court properly refused to charge on insanity.
3. Homicide—Instructions—Defenses—Alibi—Insanity—Where, in
   a prosecution for homicide, defendant pleaded insanity and an
   alibi, and there was evidence justifying the jury in dis-
   believing the testimony with reference to alibi, an instruction
   that if the jury believed beyond a reasonable doubt that
   defendant unlawfully, feloniously, willfully and with malice
   aforethought, and not in his necessary or apparently necessary
   self-defense, shot deceased, from which shooting deceased
   then and there presently died, the jury should find defendant
   guilty of murder, etc., was proper.
4. Criminal Law—Accessories—Inducement.—Where defendant
   was present, encouraging, assisting, and advising another in
   killing deceased, the law presumes that defendant's presence,
   etc., "induced" the commission of the act.
5. Homicide—Self-Defense—Manslaughter.—Where, in a prosecu-
   tion for homicide, it appeared that defendant and another

conspired to kill deceased, and that they approached him unawares and shot the top of his head off while he was lying asleep in his home, and that deceased's death was instantaneous, defendant was not entitled to an instruction on self-defense or on manslaughter, either voluntary or involuntary.

CARROLL & CARTER and L. T. CARTER for appellant.

N. B. HAYS, Attorney General and CHAS. H. MORRIS for Commonwealth.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

James R. York was assassinated at his home in Anderson county, Ky., some 4 1-2 miles from Lawrenceburg, on Friday, August 18, 1905. In September, 1905, the grand jury of Anderson county returned an indictment against W. H. York and James Bast, charging them jointly with murder. The indictment is as follows: "The grand jurors of the county of Anderson, in the name and by the authority of the commonwealth of Kentucky, accuse William H. York and James Bast of the crime of willful murder, committed in manner and form as follows, to-wit: The said William H. York and James Bast, in the said county of Anderson, before the finding of this indictment, with force and arms, unlawfully and feloniously, willfully and with malice aforethought, did amongst themselves conspire, confederate and agree to kill and murder James R. York, and afterwards, to-wit, on the 18th day of August, 1905, in the county aforesaid, in pursuance of and according to the conspiracy, combination, and agreement amongst themselves had as aforesaid, did willfully, feloniously, and with malice aforethought, kill and slay and murder the said James R. York by shooting and wounding him, the said James R. York, with guns and pistols,

deadly weapons, loaded with powder and leaden bullets and other hard and deadly substances, from which shooting and wounding, he, the said James R. York, then and there presently died. Against the peace and dignity of the commonwealth of Kentucky.'' James Bast, the appellant herein, demanded a separate trial, and, at the January term, 1906, of the Anderson circuit court, he was tried, found guilty, and his punishment fixed at life imprisonment in the penitentiary. Because of several alleged errors occurring during the progress of the trial he prosecutes this appeal.

Under the plea of ''not guilty,'' the appellant's testimony was directed towards establishing an alibi, and also in support of the plea of insanity. It is contended by counsel for appellant that, if guilty of any criminal connection with the assassination, it was that of ''an accessory before the fact,'' and that the court erred in not giving a peremptory instruction. for the reason that he was not charged in the indictment with being ''an accessory before the fact.'' This contention is answered by the statement that he is charged in the indictment with being a principal, and the court in its instructions directed the jury to find him guilty as princpal, or not at all. No instruction was given to the jury that they might find him guilty of being ''an accessory before the fact.'' The peremptory instruction asked for by appellant was properly overruled, for appellant was charged with the murder of James R. York, and it was the province of the jury to say, under the plea of appellant, and the proof offered, as to whether or not he was guilty of that charge. Appellant also complains that the court erred in not instructing the jury on the question of insanity. We have given the record a most careful consideration, and have weighed all of the testimony offered by appellant upon this question, and the record does

not disclose a particle of evidence that appellant was or ever had been insane. It is true that he was shown to have been subject to epilepsy. A majority of the witnesses, in fact, all of them, testified that appellant, though not a man of strong will power, had sufficient mind to distinguish right from wrong. No witness testified that he was of unsound mind, though all agreed that he was of weak mind and easily influenced, and while the physicians testified that epilepsy, when extending over a long period, has a tendency to weaken the mind, as it doubtless did in this case, yet none of them say that it had weakened the mind of appellant to such an extent as to cause him to lose control of his actions, or that he was unable to distinguish right from wrong. In the case of Fitzpatrick v. Commonwealth, 81 Ky. 361, 5 Ky. Law Rep. 363, when discussing this question, this court said: "There is no law which will excuse or palliate a deliberate murder, on the ground that the perpetrator of it is unlearned, passionate, ignorant, or even of weak mind, unless the weakness of mind amounts to such a defect of reason as to render him incapable of knowing the nature and quality of his act, or, if he does know it, that he does not know it is wrong to commit it."

In the case before us the proof shows that the accused did know that it was wrong to murder. He understood and realized this fully, as much so perhaps as any man of ordinary intelligence would have, and that he did so realize it is evidenced by the fact that it was planned by the accused and William H. York that the life of James R. York should be taken at a time and in a way so as to avoid the possibility of detection. The plans, as described by the accused, show conclusively that he was not a man of unsound mind, and on this showing and on this proof, the trial

court properly refused to give an instruction on the question of insanity. The accused also complains of instruction No. 4, which is as follows: "If the jury believe from the evidence beyond a reasonable doubt. that the defendant, James Bast, in Anderson county, before September 9, 1905, unlawfully and feloniously, willfully and with malice aforethought, and not in his necessary or apparently necessary self-defense, shot James R. York, with a gun loaded with powder and leaden bullets, or other hard and deadly substances, from which shooting, he, the said James R. York, then and there presently died, you should find the defendant guilty as charged, and fix his punishment at death or confinement in the penitentiary for life in their discretion." The accused was charged in the indictment with having killed him. The proof tended to show that he had planned to kill him, and it was for the jury to say from the evidence whether or not he did kill him. The testimony discloses the fact that for more than two years the accused had been planning with William H. York, brother of the deceased, to take the life of the deceased; that the accused had upon, at least, two occasions, attempted to procure another person to take the life of James R. York; that these conversations relative to the taking of the life of James R. York had been frequent, there is no doubt; that the purpose for which he was to be killed was to enable William H. York to come into possession of his property, in which the accused was to some extent, at least, to share. On Tuesday night before the killing the plans were perfected, by which James R. York was to be killed on Friday. It was known to the accused and William H. York that on Friday William Wallace and his family, who lived with James R. York, would attend the Lawrenceburg fair, and this would leave James R. York at home

alone. Accused was to meet William H. York in the
forest, not far from the residence of James R. York,
on Friday morning. He was to bring with him a sin-
gle-barrel shotgun, which was to be used in killing
James R. York in the event that William H. York
failed in his efforts to secure a double-barrel shotgun.
This agreement on the part of the accused he admits
having carried out in part. Armed with a single-
barrel shotgun, he was in the neighborhood, where he
had agreed to be, early on the morning of the day
upon which James R. York was assassinated. Not
only did he admit this, but several witnesses testified
to having seen him in that neighborhood with a gun
of the character described. William Wallace and his
family left home, and started for the fair about 11
o'clock on Friday morning, leaving James R. York
alone in the house. They returned in the evening
about 6 o'clock, and found him lying upon a couch
or sofa in the hall, with the entire top of his head
blown off. He was killed some time between 11
o'clock in the morning and 6 o'clock in the evening,
and, from the testimony given by the coroner, it is
evident that he was killed nearer 11 o'clock than he
was to 6 o'clock, as the body had become somewhat
rigid at the time it was examined by the coroner. The
accused shows by several witnesses that he was seen
going along the road from a point beyond the lane
leading to the home of James R. York toward Law-
renceburg and that he arrived in Lawrenceburg
about 11 o'clock, These witnesses, however, did
not agree as to the time of the day at which
he was seen by them. Some, who evidently saw him
when he was further from town than the point at
which he was seen by others, fix the time at two hours
later in the day than the others say he was seen
nearer the town. A son of the accused, who was sick

at the time, testified that his father was at home on
that day from 11 o'clock until half-past two.   The
accused having admitted to others that he had
planned to kill the deceased in a most deliberate and
cold-blooded manner, and the fact that he was seen
in that neighbrohood on the morning upon which de-
ceased was killed, armed, as he admits he had agreed
to arm himself, for the purpose of killing deceased,
and deceased having been killed upon that day, and
the accused upon being charged with the murder hav-
ing attempted to establish the fact that he was not
there when the murder was committed, it was cer-
tainly the province of the jury to say, under the proof
offered, whether or not the alibi had been established
to their satisfaction, and instruction No. 4 was proper
under the facts proven.   If the jury refused to be-
lieve the little son of accused, then there was abso-
lutely no testimony to establish the whereabouts of
accused from half-past 10 or 11 o'clock in the day
until he was seen at the fair ground, between 3 and 4
o'clock.   He would have had ample time to go back to
where James R. York lived and commit the crime,
and return to Lawrenceburg between 11 a. m. and 3
p. m., when he is next accounted for by his presence
at the fair.

Appellant also complains of instruction No. 5, be-
cause it failed to tell the jury that, although they
might believe from the evidence that the accused was
present and encouraged, and assisted, and advised
William H. York to shoot and kill James R. York,
yet, unless they further believed that William
H. York was thereby induced to do the killing, they
should find him "not guilty."   This, however, is not
sound, for the law presumes that when one is present
encouraging, assisting, and advising another to do an
unlawful act, the one so acting is induced by the pres-

ence and encouragement of the other to commit the act. From the very fact that he is present encouraging and advising the commission of the act the law presumes that such presence, encouragement, advice, and assistance induces the commission of the act in a case like this. Appellant's next, and we apprehend his chief, objection is that the trial court failed to give to the jury instructions on manslaughter, voluntary and involuntary, and on self-defense, and, in support of his contention on this point, he relies upon the cases of Messer v. Commonwealth, 90 S. W. 955, 28 Ky. Law Rep. 920; Ratchford v. Commonwealth, 28 S. W. 499, 16 Ky. Law Rep. 411; Rutherford v. Commonwealth, 13 Bush 608; and Buckner v. Commonwealth, 14 Bush, 601.

In the case of Messer v. Commonwealth, first reported in 76 S. W. 331, 25 Ky. Law Rep. 700, the accused himself testifies that he killed deceased, but alleged that it was done accidently, and under the facts proven; and in the testimony the court said that an instruction should have been given upon the subject of involuntary manslaughter, and that it was error in the court in failing to do so. On the second appeal of this case, found in 85 S. W. 722, 27 Ky. Law Rep. 527, this court held that the trial court erred in failing to give an instruction on self-defense, for, while the plea of the accused was that the killing was done accidentally, yet the theory of the commonwealth was that the accused had killed deceased while carelessly and recklessly handling a pistol, with knowledge of its danger to those about him, and there was proof in the case to the effect that the accused had sustained unlawful relations with the deceased; that they had had previous troubles, neighbors had heard screams coming from the direction of her house on a previous occasion, and the accused had said that she

had driven him from her home, and that the matter
was not over, or words to that effect. And on the
third appeal of this case, found in 90 S. W. 955, 28
Ky. Law Rep. 920, the appellant complained of the
action of the court in giving to the jury an instruction
on self-defense when his contention was that he had
killed deceased accidentally, and this court, in passing
upon that question, said: "In giving the instruction
in question, we assume that the trial judge was fol-
lowing the rule so repeatedly announced by this court
that where no eyewitness to the homicide testifies as
to the facts thereof, it is the duty of the court to give
an instruction on the law of self-defense."

In the case of Ratchford v. Commonwealth, 28 S.
W. 499, 16 Ky. Law Rep. 411, the dead body of Bud
Finn, with two gunshot wounds in the left thigh, his
head crushed in, and his brains knocked out, was
found near the city of Falmouth, A number of loose
and bloody stones were lying about, and the ground
bore evidence that there had been a fierce struggle
between the decedent and his antagonist. The ac-
cused, Ratchford, was arrested, charged with mur-
der, was thereafter indicted and convicted. The testi-
mony was purely circumstantial. There was no eye-
witness to the transaction. Upon appeal to this court,
it was held that under the plea of "not guilty," al-
though the accused testified that he was not at the
place of the killing, and did not commit the act, yet,
where there is no proof showing the facts attending
the killing, the law applicable to murder, manslaugh-
ter, and self-defense must be given, although the court
in this case said: "Ordinarily the instructions must
conform to the proof and be suggested by the proof."

In the case of Rutherford v. Commonwealth, 13
Bush, 608, this court held that where there was no

eyewitness to the killing, the law applicable to murder, manslaughter, and self-defense should be given, in order to meet any state of facts the jury may find from the circumstances in evidence to have existed. In this case the facts are not fully stated, but we gather from the opinion that there was conflicting evidence on the question as to whether or not there had been previous trouble between the families of accused and deceased, and there being no one present at the killing, the jury were left to judge from the facts and circumstances surrounding it as to whether it was murder, manslaughter, or justifiable homicide.

In the case of Buckner v. Commonwealth, 14 Bush, 601, this court held that it was proper, under an indictment for murder in that case, to give an instruction on involuntary manslaughter. The facts connected with that homicide, as recited in that case, undoubtedly supported the finding of the court. Thus it will be seen that in a number of cases this court has held that in instances where there was no eyewitness to the killing, and the evidence is purely circumstantial, it is the duty of the trial court to give to the jury, as said in the Rutherford opinion, all of the law that might be applicable to the case as developed by the facts proven. Where the physical facts do not preclude the existence of any particular theory as to the killing, the trial court should not deny to the accused the benefit of an instruction upon that point. Instructions should be based upon the testimony, and as said in the Ratchford case, the instructions should conform to the proof and be suggested by the proof, and it is only in that class of cases where there is a total absence of testimony as to the circumstances under which the killing occurred, that this court has held that the accused is entitled to an instruction covering every degree of crime, including self-defense.

In the case of Mackey v. Commonwealth, 80 Ky. 345, 4 Ky. Law Rep. 179, the accused was charged with killing a man who was sitting under a light talking to his friends. Mackey was in the dark and he was not identified. The trial court in that case refused to give an instruction on self-defense or voluntary or involuntary manslaughter, and, in commenting upon the action of the trial court, this court said: "There was no evidence in the case tending to show either heat of passion, self-defense, or involuntary manslaughter, and it was not proper for the court to instruct the jury on those branches of law, as there is not a single fact or inference to be drawn from any or all of the facts combined in the case that would render such instruction applicable." And this opinion was rendered by the court with a full knowledge that it had been repeatedly held that it is the duty of the trial court to fully instruct the jury on all law of the case, for the court further said: "It is true this court has held that it is the trial court's duty, whether asked to do so or not, to fully instruct the jury in all the law of the case. Yet it has never been decided that a routine of instructions, regardless of their applicability to the facts of the case, should be given."

And, again, in the case of Madison v. Commonwealth, 17 S. W. 164, 13 Ky. Law Rep. 313, in response to a complaint that the trial court had refused an instruction on involuntary manslaughter, this court said: "In Rutherford v. Commonwealth, 13 Bush, 608, it was held that: 'When no witness introduced on the trial saw the homicide committed, or saw the parties after they met on the occasion when the killing occurred, the law applicable to murder, manslaughter, and self-defense should be given, in order to meet any state of facts the jury may find from the circumstances in evidence to have existed.' And that

has since been adhered to. It is true, cases may occur where the issue is so plainly and palpably murder or no offense at all, as to render superfluous an instruction as to manslaughter." And, in this case, the court said that there was evidence tending to show that previous to the killing the accused and his daughter were quarreling in a loud and angry manner, and that he was therefore entitled to an instruction on the subject of manslaughter, but: "It was not proper to give an instruction on the subject of involuntary manslaughter. * * * For the evidence does not actually nor inferentially show a condition authorizing such instruction."

In the case of O'Brien v. Commonwealth, 89 Ky. 363, 11 Ky. Law Rep. 534, 12 S. W. 471, the accused was tried for the murder of Bettie Shea. The evidence in that case showed that she was last seen alive on Sunday night. Early the next morning she was found dead, lying upon the floor of her room, partially disrobed. The condition of the body showed that she had been struck several times upon the head with some blunt instrument, which crushed her skull. Her room was in a remote part of the house. The family by whom she was employed heard no noise and knew nothing of the killing until the next morning. The evidence in the case was purely circumstantial. A motive for committing the crime was shown. He was a strong and robust man, and she a delicate woman. The trial court refused to give an instruction as to manslaughter, and this court, in commenting upon his action, said: "It is not the duty of the court, in every case of homicide, to instruct as to both murder and manslaughter. Instructions must be based upon the evidence, and given to suit the case in hand." In this case, as in the case at bar, the accused denied the killing, and the court said that: "The plea of 'not

guilty' authorized him to rely upon every ground of defense, and entitled him, if the evidence authorized it, to an instruction based upon the idea that if he did kill the deceased, yet, if done in sudden passion, he was only guilty of manslaughter, yet he is a man, and she was a weak, defenseless woman.    Motives are shown upon his part for killing her. Preparation with an adequate weapon was made. The killing was secret in character, and neither the clothing nor the person of the accused showed the least mark of any struggle. No instruction as to manslaughter should, therefore, have been given.''

In the case of Slagel v. Commonwealth, 81 Ky. 488, 5 Ky. Law Rep. 545, accused was charged with the murder of three men. These three men, on the evening of August 13th, went to a grocery with the accused, bought a quart of whisky, paid $1 for it, received $9 in change, got a $20 bill changed; all left the grocery together, and returned to a rockhouse, where they were camping, and were seen at the rockhouse that night. The accused was sober, and all of the others intoxicated. The next morning the accused had disappeared; two of the men were found at the bottom of the cliff, one dead, and the other dying. The third man was found at the top of the cliff dead. Each of them had been knocked in the head with an ax, which was found near the rockhouse. No witnesses saw the killing. Three pallets, lying upon the floor, side by side, with a pool of blood at the head of each, gave mute evidence of the places where the deceased had been killed. In this case the trial court refused to instruct the jury on the law of self-defense, or killing in sudden heat and passion, and this court said: ''The rule is, where there is any evidence tending to support any view of the case embraced by the position of the prosecution or the plea of the accused.

that it is the court's duty to instruct the jury with
refernce thereto.; but, where there is no evidence in
the case, or the evidence is of such character as to
leave no room for doubt that any shade of a given
phase of the law is not applicable to the case, it ought
not to be embodied in an instruction to the jury. A
treatise, abstract, or analysis of the whole law of
homicide should not be given in every case, but only
so much of the law as applies to the facts of the case
under investigation.''

The case of Brown v. Commonwealth, 122 Ky. 626,
92 S. W. 542, 28 Ky. Law Rep. 1335, is not in conflict
with this opinion. Thus it will be seen that this court
has not laid down the rule that in every case where
there are no eyewitnesses to the killing, and the evi-
dence is purely circumstantial, it is the duty of the
trial court to give to the jury all of the law of homi-
cide that might be given upon any state of case; but
a careful analysis of all the opinions discloses this
fact: That this court has held with a dgree of uni-
formity that it is the duty of the trial court to give to
the jury all the law of the case, as warranted by the
facts and circumstances proven; and in those cases in
which the physical facts show that the homicide could
not have occurred in a particular way, then it is not
the duty of the trial court to give to the jury the law
on that phase of the case. Where the physical facts
are such as to preclude the idea that there was a
struggle or any resistance offered, whatever, by the
deceased, at the time that his life was taken, the trial
court would be fully justified and warranted in refus-
ing to give an instruction on self-defense. And,
again, where the physical facts, as in the case before
us, are such as to preclude the idea or the possibility
that the killing was the result of an accident, or that
it was the result of a sudden affray, then the trial

court would be warranted in refusing to give an instruction on the subjects of voluntary or involuntary manslaughter. This point is aptly illustrated in the case where an infant of tender age is murdered by having its throat cut, while lying in its crib. Most assuredly no instruction in a case of this kind would be given upon the subjects of voluntary or involuntary manslaughter, or self-defense; and, yet, if the position taken herein by appellant is tenable, this would have to be done. The same would be true in case a helpless paralytic should be murdered. And not unlike the case of the infant or the paralytic is the case before us. James R. York, an old man borne down by the weight of years, while lying upon a couch in the hallway of his own home, was foully murdered by an assassin with a gun; the whole top of his head being blown off, and, as shown by the testimony of the coroner, his death was instantaneous. He was unaware of the assassin's presence. He never moved after he received the fatal shot. The killing was done with a gun stolen from a neighbor's house, and a time selected when it was known he would be alone. Noiselessly, stealthily, the assassin or assassins approached him, and, without even arousing him from the slumber, in which they evidently found him, he was ruthlessly slain. The court gave to the jury every instruction which the evidence and the physical facts developed in this case warranted. He gave to the jury the whole law of the case. This killing was not the result of a sudden affray, nor was it done in the defense of any one, nor was it accidental; but the evidence shows that it was a cold-blooded murder. The idea that it was a justifiable homicide, or a case of voluntary or involuntary manslaughter, is precluded by the facts developed on the trial. We are convinced that the trial court, in all of his rulings during the

progress of the trial, committed no error prejudicial to the rights of appellant. He submitted to the jury the question of appellant's guilt or innocence as shown by the evidence, and it was for them to say, under the proof before them, whether or not appellant was proven guilty.

A motive was shown for the commission of the crime. That appellant had arranged to take part in its commission there cannot be the slightest doubt. Under his plea of "not guilty" he denies that he did the killing, and attempts to show that he was at another place when the killing must have been done. An alibi is the strongest possible defense when thoroughly established, but it becomes, at once, the most dangerous and weakest of all defenses that could be set up, when it is not thoroughly established. It has been wisely made the province of the jury to say, from the evidence presented in each particular case, whether or not the alibi has been established. In this case they had the witnesses before them. They had the facts and circumstances surrounding this killing presented to them. They heard the testimony offered by appellant to the effect that he was not in the locality at the time that the killing occurred; and, with all of the testimony before them, they returned a verdict finding him guilty of having committed a most deliberately planned and foully executed murder. Their finding and verdict, in the absence of any errors in the admission of evidence, or in the instructions to the jury, will not be disturbed.

The judgment is affirmed.

Petition for rehearing by appellant overruled.