## McElwaine v. Commonwealth.

(Decided June 4, 1913.)

## Appeal from Wayne Circuit Court.

1. Homicide—When No Eye Witness—Circumstantial Evidence—Instructions.—In a case of homicide to which there is no eye witness, and the Commonwealth must rely wholly upon circumstantial evidence in attempting to prove the guilt of the accused, the trial court should instruct the jury upon the law as to murder, voluntary manslaughter and self-defense as well as on the subject of reasonable doubt.

2. Homicide—Circumstantial Evidence—Instructions.—The above rule does not apply, however, where the testimony of an eye witness to the homicide, supported by a strong chain of circumstantial evidence, shows the crime to have been committed premeditatedly and with malice aforethought, and the only defense inter-

posed is the defenlant's personal denial of guilt and an attempted alibi. As in such case the crime is murder or nothing, an instruction as to murder and reasonable doubt will give the jury all the law required for their guidance in arriving at a verdict.

3. Homicide—Evidence—Exhibit of Shells Found at Place of Killing.—As a breech loader double barrel shot gun was used in killing the deceased and three or more shots were fired in committing the crime, it was competent to exhibit to the jury two empty gun shells, identified as having been found at the place of the killing, upon a showing that they were of the kind and quality required for use with such a gun as the defendant was shown to have had in his possession at the time of the killing.

4. Homicide—Evidence—Exhibit of Pieces of Deceased's Skull.— As according to uncontradicted evidence the shots by which deceased was killed tore away the top of his head and scattered parts of the brain and skull on the ground where his body lay, it was competent, after identifying them as the same found with the body, to exhibit the pieces of skull in evidence to the jury, without proving by a surgeon or anatomist that they were parts of the skull of a human being.

C. C. DUNCAN, J. C. DAVIS, W. B. BERTRAM and O. B. BERTRAM for appellant.

JAMES GARNETT, Attorney General, O. S. HOGAN, Assistant Attorney General for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Andrew McElwaine, a negro, was tried, convicted and given the death penalty in the Wayne Circuit Court, under an indictment charging him with the murder of James Baker, also a negro. He sought a new trial in the court below and now asks of this court a reversal of the judgment of conviction on two grounds: First, that the trial court admitted incompetent evidence. Second that the court in instructing the jury failed to give all the law of the case.

To properly determine the questions thus presented, consideration of the evidence will be necessary. Appellant and Baker, prior to the day of the homicide, were in the employ of the Federal Government while it had under construction a lock and dam on the Cumberland River in Wayne County; the former having been at work for six months as a quarry hand, the latter for more than a year as a cook or waiter. The home of Baker was at Burksville, Cumberland County, that of appellant at Somerset, Pulaski County.

According to the evidence, both received two days before the homicide the wages due them. The killing occurred between eight and nine o'clock A. M. Baker, after avowing his purpose to return to his home at Burksville, hired of one Eads a mule upon which to make the journey. Before starting, however, he went to the store of Jim Coomer where he was soon followed by appellant who remained at the store until Baker mounted the mule and left.

It appears from the evidence that appellant was present when Baker hired the mule from Eads and then learned from the conversation between them what route deceased would take to reach the Monticello road in going to Burksville. Before leaving Coomer's store, appellant pointed to a place where Coomer had previously kept guns for sale, asked what had become of them and said he wished to purchase one. Upon being told by Coomer that the guns had been sold and that he had none for sale, appellant went from the store to the basement of a house occupied by the government employees where three guns were kept; one a double barrel shotgun. Tarrying but a moment in the basement he was seen by Bob Williams, a witness, who testified on the trial, to come out and leave the premises with something concealed under a raincoat he was wearing which made the coat stand out in the upper part of the back from his body. After the dead body of Baker was found a search of the basement disclosed the absence of the double barrel shotgun. A few minutes after leaving the basement appellant was seen by another witness, Alonzo Dickson, with a shotgun in his hand walking rapidly up a hollow that led to a quick intersection of the road Baker was traveling to reach the Monticello road and it was on the ridge not far from the head of this hollow that the dead body of Baker was found.

Henry Burriss met Baker on the road near where his body was found and after traveling a short distance further met appellant carrying a shotgun. He was going in the same direction Baker was traveling and asked Burriss if he met a colored man and said that the person referred to was leaving without his gun and he was taking it to him. After going a short distance, Burriss heard three or four shots.

There was one eye witness to the homicide, Josh Hunter, a colored man, who was leading a mule attached to a sled and on his way to the lock for slop. According

to his testimony, appellant came along the road over which Baker had ridden and upon getting near him shot him in the back. The shot so alarmed Hunter's mule that it ran against or over him and while trying to keep out of the way of his mule or prevent its escape, he heard appellant order Baker to get off the mule he was riding and as the latter was getting off or falling off the mule, appellant shot him again, the shot taking effect in his face or head. Hunter then hurriedly led his mule and sled out of the road and away from the place of shooting, leaving appellant standing over the body of Baker which was lying in the road.

Near the place of the homicide, Hunter met Harry Arthur, a white man, whom he told of the killing and the latter and a neighbor found the body of Baker where it had been dragged from the place of the killing and thrown into the bushes near the road. Before finding the body they discovered a large pool of blood, some of the brains of Baker and parts of his skull in the road where the shooting was done; the top of Baker's head had been blown off by the shot from the gun and some of them had entered the back, back of the head and also the face, neck and chest.

It was further found that the shirt of the deceased had been pulled over his head, his pockets turned inside out, and that there was no money upon his person, although he was known to have started from Coomer's store a few minutes before with money in his possession received in payment of the wages due him.

Appellant was not seen in the vicinity after the homicide, but was later arrested in Pulaski County, where he had remained concealed in the barn of a friend eight days.

The evidence seemed to show a double motive for the killing. Appellant in giving his testimony, admitted that on the night before the homicide he caught Baker cheating in a game of craps; that they had a quarrel and scuffle over the money which had been put up on the game and that in the scuffle one of the bills had been partly torn. He, however, claimed that early on the morning of the killing he had a talk with Baker and returned to him the money over which they had quarreled. The quarrel, together with the statement "come down off that mule, I mean what I say," appellant made to Baker at the time of the shooting in the presence of Hunter, furnished evidence of ill will and malice on the part of appellant toward

Baker and conduced to supply a motive for the homicide. In addition, proof of the rifling of Baker's pockets and taking of his money following the killing, which acts must have been committed by his slayer, conduces to show that the motive of the latter was robbery. In view of these facts, it is not wide of the mark to say, that in committing the crime appellant was actuated by a double motive.

The only attempted contradiction of the evidence of the Commonwealth is found in the testimony of the appellant, which not only denied his guilt, but also every fact that tended to show any opportunity on his part to commit the crime. Indeed, he claimed to have been on the opposite side of the Cumberland river from the place of the crime at the time it was committed, and in an attempt to prove this fact, introduced as a witness the owner of a shanty boat who testified that he ferried him across the ferry as he (the witness) believed at about eight o'clock on the morning of the murder; which testimony, if true, would have established an alibi for appellant. But the force of this testimony was destroyed by the admission of the witness that his watch was not at the time running, and that his opinion as to the time of day he ferried appellant across the river was based upon mere conjecture.

The careful consideration we have given the evidence convinces us that appellant's testimony, and that of the witness claiming to have ferried him across the river, was so wholly at variance with the many facts manifesting his guilt established by the Commonwealth's evidence, we are not surprised at its rejection by the jury. In our opinion a verdict declaratory of appellant's guilt was authorized by the evidence; and while the punishment inflicted is the severest known to the law, it was the province of the jury to fix it and in the absence from the record of prejudicial error in some ruling of the trial court, the verdict must stand.

It is appellant's contention that the court erred in admitting evidence of the finding of two empty cartridge shells on the ground at the place of the murder and in submitting them to the inspection of the jury; also in allowing the coroner to exhibit to the jury pieces of the skull bone of James Baker, without first proving by a competent anatomist that they were parts of a skull bone. Neither of these objections can properly be sustained. It was competent to prove the finding of the empty shells and also to exhibit them to the jury. According to the

evidence, appellant killed Baker with a double barrel breech loader shotgun, in shooting which, shells of the size and quality of those found at the place of the killing were required; and if, as the evidence showed, appellant fired more than two shots at Baker, he had to remove from the gun the two shells first used, and being found where the killing occurred, the jury had the right to infer that they were removed by appellant and thrown to the ground to make room for two other shells which were used in firing the last two shots at Baker. The Commonwealth did not have the gun with which the killing was done, therefore, the empty shells could not be fitted to the gun, but in its absence the Commonwealth had the right, after identifying the shells as the two found, to prove, as was done, that they were of the kind used for a shotgun such as was employed to kill Baker.

The introduction as evidence of the pieces of skull bone was also competent. They were found where the killing occurred by the coroner with the blood and a part of the brains of the deceased, and as the top of the latter's head was shot off and some of the brains and pieces of skull were missing, it did not require a surgeon or anatomist to testify as an expert that the pieces of bone introduced in evidence were parts of the skull of a human being.

We find no merit in appellant's complaint as to the instructions. An instruction submitting to the jury the question whether he was guilty of voluntary manslaughter would have been improper, as would also an instruction upon the law of self defense. The crime was murder or nothing. There was no attempt upon the part of appellant to show that he acted in self-defense. On the contrary, his only defense was an attempt at proving an alibi. If he did the killing the act, according to the testimony of Hunter, the only eye witness, was murder. So if from the evidence the jury believed him guilty they necessarily had to find him guilty of murder. In cases of homicide to which there is no eye witness and the Commonwealth must rely wholly upon circumstantial evidence in attempting to prove the defendant's guilt, we have generally held that the trial court should instruct the jury upon the law of murder, voluntary manslaughter and self-defense, as well as on the subject of reasonable doubt; but this rule does not apply in a case like the one at bar where the testimony of the only eye witness to the killing, supported by a strong chain of circumstantial

evidence, shows the crime to have been committed premeditatedly and with malice aforethought, and the only defense interposed by the accused is a denial of guilt and an attempted alibi. O'Brien v. Commonwealth, 89 Ky., 363; Mackey v. Commonwealth, 80 Ky., 345; Gatlift v. Commonwealth, 32 Ky. Law Rep., 1063; Steeley v. Commonwealth, 129 Ky., 524; Gordon v. Commonwealth, 136 Ky., 508; Bast v. Commonwealth, 124 Ky., 747. In such a case an instruction as to murder and reasonable doubt will give the jury all the law required for their guidance in arriving at a verdict. They were thus instructed in this case and instructions as to voluntary manslaughter and self-defense were unnecessary and would have been improper.

The record disclosing no reason for disturbing the verdict, the judgment is affirmed.