## Cox v. Commonwealth.

(Decied April 17, 1914.)

## Appeal form Hart Circuit Court.

1. Homicide—Murder—In the Absence of Eye-witnesses How Guilt of Accused May Be Shown.—Where it is shown by the evidence that the death of deceased was caused by wounds appearing upon his body; that the wounds were inflicted by an edged instrument, such as a pocket knife, in the hands of a person of accused's physical strength and capacity; added to which is his confession that the wounds were inflicted by him, and the production by him of the knife admittedly used in inflicting them, upon the blade of which blood was discovered, such evidence was sufficient to authorize the jury to return a verdict finding the accused guilty of murder; it being apparent from the evidence that the accused's confession of his guilt was voluntarily made.

2. Homicide—Jury—Province of to Determine Degree of Accused's Offense as Well as His Guilt or Innocence.—Where it is manifest from the evidence in a case of homicide that the killing was done by the accused with malice aforethought or in sudden heat or passion, it being the province of the jury to determine the degree of his offense as well as the question of his guilt or innocence, their verdict finding him guilty of murder will not be disturbed if there was any evidence tending to show that the killing was maliciously done; although there may also have been some evidence from which the jury might reasonably have found that the killing was voluntary manslaughter.

3 Homicide—Instructions—Involuntary Manslaughter—When Instruction on Unnecessary.—Although in a case of homicide to which there are no eye-witnesses save the accused and his victim, it is ordinarily necessary for the trial court to instruct the jury upon all the law of homicide that might be given upon any state of case, this rule does not apply to a case in which it is shown that the homicide could not have occurred in a particular way therefore, where it is manifest from the evidence that the killing was not involuntary manslaughter, it was not error for the trial court to refuse an instruction on the law of involuntary manslaughter. In this case, as the jury were instructed as to murder, voluntary

manslaughter, self defense, and reasonable doubt, they were given all the law necessary for their guidance in arriving at a verdict.

D. A. McCANDLESS for appellant.

JAMES GARNETT, Attorney General; OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Charlie Cox, was tried and convicted in the Hart Circuit Court under an indictment charging him with the murder of David Sanders, his punishment being fixed by the verdict of the jury at confinement in the penitentiary for life.   The facts of the homicide, briefly stated, are as follows: On and prior to May 12, 1913, the appellant and deceased were paupers, inmates of the Hart County poor house and occupants of the same room and bed, both being cripples and capable of performing little manual labor.   On the night of May 12, 1913, they retired as usual, but some time during the night Sanders was killed by having his throat cut and receiving a knife wound in the abdomen.   The body of Sanders was discovered early the following morning by another inmate of the poor house, who found it, clothed only in a shirt, lying across the bed, dead but still warm.   Quite a quantity of blood from the wounds was found upon the bed and floor.   The appellant Cox, was not then in the apartment.   Fulks, the superintendent of the poor house, upon being notified of the death of Sanders, went to the room and discovered the condition of the body and surroundings as stated.   Upon looking for the appellant Cox he found him in an adjoining room with a negro inmate.   Appellant, upon being asked by Fulks what he knew about the killing of Sanders, admitted that he did it with his pocket knife because Sanders was biting him, and at the time exhibited to Fulks his hand, showing some laceration of the flesh between the thumb and index finger, saying that that was where Sanders had bitten him.   At Fulks' request appellant delivered to him the knife with which he had done the cutting and there was some blood upon it.

The County Coroner was at once summoned and at the inquest held by him appellant again admitted his guilt of the homicide and in doing so gave the facts substantially as he had related them to Fulks, the keeper of the poor house, again exhibiting his hand upon which

he claimed to have been bitten by deceased. Dr. Nichalls, a physician, examined the appellant's hand, but expressed doubt as to the slight wound having been caused by a bite. No person other than appellant and deceased were present when the killing occurred, but a number of witnesses were introduced on the trial who testified with respect to the confession of appellant, the position on the bed of the body of deceased when found, the character of his wounds, as to the blood upon the bed and floor and on the knife with which appellant admitted he did the killing.

The appellant did not himself testify on the trial, but introduced in his behalf Fulks, the keeper of the poor house, Squire Vaughn, Oscar Fuqua and S. B. Crump, all of whom had previously testified as witnesses for the Commonwealth, but no fact was elicited of any of these witnesses that threw any material additional light upon the case. It is manifest from the testimony of the physician and others that the death of Sanders was caused by the wounds that were found upon his body, and that the wounds were of such a character as could have been produced by a pocket knife like that belonging to appellant, and with which he admitted he inflicted the wounds upon Sanders' person.

It was insisted by appellant's counsel on the motion for a new trial and is now argued that the evidence was not suffiicient to establish his guilt and that the trial court erred in failing to give the jury an instruction as to involuntary manslaughter. No objection is made to the instructions given and we find them substantially correct, for they properly advised the jury in what state of case they would be authorized to find appellant guilty of murder or voluntary manslaughter, and what punishment they might inflict for the first named crime, but that if they found him guilty of the second they should merely pronounce his guilt; also what would justify the application of the law of self-defense; while in and through the instructions, separately and as a whole, ran the admonition to the jury to allow the appellant the benefit of every reasonable doubt in the matter of determining his guilt or innocence, or, if they found him guilty, in determining the degree of his offense.

The contention as to the alleged insufficiency of the evidence cannot be sustained. It clearly established the facts that the death of the deceased was caused by the wounds appearing upon his body when found; that the

wounds were inflicted by an edged instrument and could have been produced by such a weapon as an ordinary pocket-knife, in the hand of a person of appellant's physical strength and capacity; added to which was his confession that the wounds were inflicted by him and the production of the knife used by him in inflicting them, upon the blade of which blood was discovered. It may well be said, therefore, that the corpus deliciti was fully shown, the manner of the killing equally well established, and that the confession of the appellant that he committed the crime was corroborated by the character of the wounds, the production by him of the knife with which they were inflicted and the presence upon the knife produced by him of the blood of his victim. In view of these facts no doubt of the appellant's guilt could have been left in the minds of the jury. It is further patent from the evidence that appellant's confession of his guilt was voluntarily made. Indeed, there is no claim on the part of his counsel that the confession was the result of coercion or of any inducement on the part of any representative of the Commonwealth or friend of the deceased, therefore no doubt can exist as to its competency.

We are further of opinion that the failure of the court to give an instruction on involuntary manslaughter was not error. "Involuntary manslaughter is the killing of another in the doing of an unlawful act without intent to kill, whether the act was directed against the person killed or against another person or thing." Lewis v. Com., 140 Ky., 652. There was nothing in the case that justified an instruction on involuntary manslaughter. The evidence fails to disclose any fact which would tend to show that the cutting of deceased by appellant was done without the intention to kill, or that the latter was engaged in the doing of an unlawful act directed against the person of the deceased or that of another, which could have resulted in the unintentional killing of the deceased. We are aware that in many cases where there were no eye witnesses to the killing and the evidence was purely circumstantial, this court declared it to be the duty of the trial court to give to the jury all the law of homicide that might be given upon any state of case, but, as said in Bast v. Com., 124 Ky., 747:

"A careful analysis of all the opinions discloses this fact: That this court has held with a degree of uniformity that it is the duty of the trial court to give to the jury

all the law of the case, as warranted by the facts and circumstances proven; and in those cases in which the physical facts show that the homicide could not have occurred in a particular way, then it is not the duty of the trial court to give to the jury the law on that phase of the case. Where the physical facts are such as to preclude the idea that there was a struggle, or any resistance offered whatever by the deceased, at the time that his life was taken, the trial court would be fully justified and warranted in refusing to give an instruction on self-defense. And, again, where the physical facts, as in the case before us, are such as to preclude the idea or the possibility that the killing was the result of an accident, or that it was the result of a sudden affray, then the trial court would be warranted in refusing to give an instruction on the subjects of voluntary or involuntary manslaghter. * * *''

In Madison v. Commonwealth, 13 R., 313, in response to a complaint that the trial court had refused an instruction on involuntary manslaughter, we said:

"In Rutherford v. Commonwealth, 13 Bush, 608, it was held that: 'When no witness introduced on the trial saw the homicide committed, or saw the parties after they met on the occasion when the killing occurred, the law applicable to murder, manslaughter, and self defense should be given, in order to meet any state of facts the jury may find from the circumstances in evidence to have existed.' And that has since been adhered to. It is true, cases may occur where the issue is so plainly and palpably murder or no offense at all, as to render superfluous an instruction as to manslaghter. And, in this case, the court said that there was evidence tending to show that previous to the killing the accused and his daughter were quarreling in a loud and angry manner, and that he was therefore entitled to an instruction on the subject of manslaughter, but it was not proper to give an instruction on the subject of involuntary manslaughter. * * * For the evidence does not actually nor inferentially show a condition authorizing such instruction."

It is manifest from the evidence in this case that the killing of the deceased by appellant was done with malice aforethought or in sudden heat or passion. If maliciously done appellant was guilty of murder. If done in sudden heat or passion he was guilty of voluntary manslaughter. While he had the benefit of an instruction on the law of self-defense his admission as to the manner

in which the killing was done failed to show him entitled to an acquittal on that ground. A verdict finding him guilty of voluntary manslaughter would not have been a surprise, for the confession of the appellant, as well as the circumstances surrounding the homicide might have led the jury to believe that it resulted from sudden heat and passion on the part of appellant. But, on the other hand, it is altogether within the bounds of reason to say that the same confession and circumstances furnished a state of facts from which malice might have been inferred; for where one unnecessarily and wantonly kills another with a deadly weapon, malice may be implied; and there was some evidence tending to show that this killing was unnecessarily and wantonly done. It was within the province of the jury to determine not only whether the appellant was guilty of unjustifiably killing deceased, but also to determine the degree of his offense; and the jury having in this case found him guilty of murder, we see no reason for disturbing the verdict.

Judgment affirmed.