CASE 76—INDICTMENT, MURDER—DECEMBER 15, 1883.

81 485
f124 759

# Slagel v. The Commonwealth.

### APPEAL FROM PULASKI CIRCUIT COURT.

1. It is no ground of objection to the indictment that one of the grand-jurors was the owner of a grist-mill.

2. The indictment against appellant as to the alleged murder of John O'Dair and James O'Dair having been dismissed, leaving the charge of murdering Joseph Claiborne as the single charge relied upon, the demurrer was properly overruled.

3. The court below committed no error in refusing to instruct the jury as to the law of self-defense. There is no proof to authorize it. It would have been an abstract treatise upon self-defense, without a word of proof upon which to base such an instruction.

O. H. WADDLE, JAS. DENTON, AND L. D. PARKER FOR APPELLANT.

The court erred in refusing to quash the indictment. One of the grand-jurors was substantially the owner of a grist-mill. (Gen. Stat., chap. 62, art. 1, sec. 1.)

The demurrer to the indictment should have been sustained, because more than one offense was charged in it, and which was not covered by section 127 of the Criminal Code. (*Ib.*, sec. 168.)

The court erred in refusing to instruct the jury upon the subject of manslaughter and of self-defense. (Commonwealth v. Smith, 10 Bush, 476; Same v. Prichett, 11 *Ib.*, 277.)

P. W. HARDIN, ATTORNEY GENERAL, FOR APPELLEE.

I know of no rule of law that requires a court to act upon a demurrer before action is had upon a motion to dismiss. After the indictment had been dismissed as to the charge of murdering the two O'Dairs, nothing was left but the charge of murdering Claiborne.

Even if it were true that one of the grand jurors was the owner of a grist-mill, it can not affect the indictment. (Prichett v. The Commonwealth, 11 Bush, 277.)

There is no basis for an instruction as to self-defense. The case shows murder, or it shows nothing.

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

On the evening of the 13th of August last, the appellant, in company with John O'Dair, James O'Dair, and Joseph Claiborne, went to a grocery, and he bought a quart of

whisky, paid one dollar for it, and received nine dollars in change for a ten-dollar bill. He also got a twenty-dollar bill changed, and shortly afterward was seen counting out money on the knee of one of the O'Dairs. All of them left the grocery together, and returned to a rock-house situated at the top of a cliff, where they were camping while being engaged in cutting railroad ties from the surrounding woods. They were seen together at the rock-house that night, the appellant apparently sober and the others intoxicated. He said, a few days before, that he had no money. The O'Dairs were known to have brought $35 to the camp with them.

Next morning the appellant had disappeared, and the O'Dairs were found at the bottom of the cliff, one dead and the other in a dying condition, and Claiborne was lying dead at the top of the cliff and on the outside of the rock-house. Each of them had been knocked in the head and his skull mashed with an axe, which was found lying in the rock-house, bloody. The other three axes, which had been used by the party in cutting timber, were also lying in the rock-house, but with no stains of blood upon them. Three pallets, side by side, with the feet to the fire, had a pool of blood at the head of each, and a fourth pallet, transversely laid at the head of the three, was unstained by blood, and had at its head appellant's old hat, and at its foot his old shoes.

Near the middle of the night before this discovery the appellant came to a railroad station some three miles from the rock-house, and asked if he could flag a train that night. He was told that he could. He was heard talking with an unknown person on the outside of the house at the station. Nothing more was heard of him that night. Next day, about noon, he was seen at a point ten miles from the sta-

Slagel v. The Commonwealth.

tion. He bought a pistol and cartridges on his road to Monticello, where he arrived that evening, thirty-five miles from the scene of the slaughter, in possession of Claiborne's gun, and with his coat, vest, and *hat*, on his person, and James O'Dair's watch in his pocket, which he sold for $5. Next morning, in conversation with a friend, he said he "expected to be accused of killing Jim O'Dair and others on the K. C. railroad." He was suspicioned on account of his actions, and was watched. During the day, upon a telegram, he was arrested, and $19.50 found in his possession. He admitted they were Claiborne's clothes he had on, but said he had bought them, and when taken to the neighborhood of the tragedy he said that he did not do "the knocking," but knew who did do it, and that he went to bed with the O'Dairs and Claiborne the night of their death.

There was some evidence tending to prove that he also had on Claiborne's *boots* when arrested. On this strong array of circumstantial evidence he was indicted, tried, and convicted of the murder of Claiborne, and sentenced to death in pursuance of the verdict, and now appeals to this court, seeking a reversal of that awful doom.

The jury found him guilty, and the evidence is sufficient to support the verdict; therefore there is nothing for our consideration except the alleged errors of law occurring at the trial, which will be noticed in the order made.

First—It is contended that the court ought to have quashed the indictment because a keeper or owner of a grist-mill was on the grand-jury that found it. This objection, according to Pritchett v. Commonwealth (11 Bush, 277), is untenable.

Second—That the demurrer to the indictment ought to have been sustained because of a misjoinder of offenses, the appellant being indicted for the murder of all of the dead

men in the same indictment. This would have been true but for the dismission by the attorney for the Commonwealth of two of the offenses, which obviated the necessity for sustaining the demurrer. (Sec. 168, Crim. Code.)

Third—It is insisted by appellant's counsel that the court should have instructed the jury in the law of self-defense and sudden heat and passion, because no eye saw the perpetration of the offence. The rule is, where there is any evidence tending to support any view of the case embraced by the position of the prosecution or the plea of the accused, that it is the court's duty to instruct the jury with reference thereto; but where there is no evidence in the case, or the evidence is of such a character as to leave no room for doubt of any shade that a given phase of the law is not applicable to the case, it ought not to be embodied in an instruction to the jury. A treatise, abstract, or analysis of the whole law of homicide, should not be given in every case, but only so much of the law as applies to the facts of the case under investigation. The court should, however, be careful to explain the law applicable to all grades and tendencies of the evidence, which must be weighed by the jury, who, and not the court, are authorized to pass upon its sufficiency. Had there been any previous misunderstanding or quarrel, or were there any circumstances connected with the case tending to show that self-defense or sudden heat and passion might have attended the homicide, the court should have explained to the jury the law relative thereto. But there is not a circumstance tending to show that either self-defense or sudden heat and passion was the cause, or reason, for the triple homicide.

The facts of this case demonstrate that the victims were murdered for their little money and property while in deep

and intoxicated slumber, and their bodies, except one whose immediate death made it unnecessary, were thrown over the cliff to make sure the destruction of life.

It was cold-blooded and pitiless assassination for small gain—large enough, though, to induce its commission by the appellant, who had no money, was uneducated, and had been badly raised. His unpropitious surroundings from birth, his lack of training and education, his age, now but twenty years, and his character for being a good work-hand, are the only and best extenuation found for him in the record.

These will not avail him in law as a defense. His crime is either murder or nothing. That issue was correctly placed before the jury by the court, which properly decided that no instructions were appropriate as the law of the case save those prescribing the essentials constituting murder and the law of reasonable doubt; and there being no legal reason for disturbing the verdict, the judgment thereon is therefore affirmed.