## Anderson v. Commonwealth.

(Decided J e 13, 1911.)

### Appeal from Edmonson Circuit Court.

1. Criminal Law—Indictment—Counts—An indictment may charge the commission of the offense in different modes and manners, and in as many counts as the pleader desires to present it; and when an indictment is thus drawn, presenting sufficiently in each count every aspect of the case in which from the evidence before the grand jury the crime might have been committed, the accused may be convicted upon evidence showing his guilt under any of the counts.

2. Conspiracy—Evidence Sufficient to Show—When a band of armed and disguised men assemble at night for the purpose of executing a felonious act, the mere fact of their assembling is sufficient to show that it was pursuant to an agreement previously formed.

3. Conspiracy—Liability of Conspirators—Where a band of armed and disguised men assembled at night for the purpose of whip-ping members of a family, and while engaged in this undertak-ing a member of the family is shot and killed by one of them whose name is unknown, the shooting may fairly be said to have been embraced within th : pur ose of the conspiracy, and it is not necessary to show tha. the killing was contemplated by the conspirators.

4. Instructions—When Self Defense Instruction Not Necessary—Instructions should not be given unless they present some theory of the case that is supporte by evidence; and when there is no conceivable theory upon which an instruction upon the law of self defense would be justifiable, it should not be given.

5. Instructions—Harmless Error—Although instructions may not correctly state the law of the case, yet if the substantial rights of the accused are not prejudic d it will not constitute reversible error.

M. M. LOGAN and ORA E. HAZELIP, for appellant.

JAMES BREATHITT, Atty. Genl., and THEO B. BLAKEY, Asst. Atty. Gen., for appellee.

Opinion of the Court by Judge Carroll—Affirming.

The appellant, Jess Anderson, Marsh Woosley and Harvie Ashley were indicted for murdering Charlie Carroll by shooting him with a gun. The indictment contained six counts. In the first count, all of them were charged as principals. In the second count it was charged that the accused together with persons to the grand jury unknown entered into a conspiracy with each other and went forth armed and disguised in pursuance of such conspiracy for the purpose of killing and murdering Carroll, and pursuant thereto and in furtherance of said conspiracy and while the same existed, they each with the knowledge, consent and agreement of the other and with others whose names are unknown, shot and killed him. The third count charged that appellant did the shooting, and the other accused were present as aiders and abettors. The fourth count charged that Woosley did the shooting and that appellant and Ashley aided and abetted. The fifth count charged Ashley did the shooting and that the others aided and abetted. The sixth count charged that some person whose name was unknown to the grand jury did the shooting and that appellant, Woosley and Ashley were present aiding and abetting; and further, that these accused, together with other persons whose names were unknown to the grand jury, went forth armed and disguised and in pursuance of a conspiracy which they formed to whip Del Carroll and others, and in furtherance of said conspiracy and agreement one of the conspirators whose name is to the grand jury unknown did unlawfully, willfully, maliciously and feloniously kill Carroll. Under this indictment the accused were tried together. The jury acquitted Woosley and Ashley, but found appellant guilty and fixed his punishment at imprisonment for life.

A reversal is asked (1) for error of the court in overruling the general demurrer to the indictment; (2) because there was no evidence to connect appellant with the commission of the crime, or to show that a conspiracy was formed between Anderson and the other accused or any other person, either to whip Del Carroll or to murder Charlie Carroll; (3) for error in giving and refusing instructions.

It is well settled that an indictment may charge the commission of the offense in different modes and manners and in as many counts as the pleader desires to present it. Commonwealth v. Hargis, 124 Ky., 356. It sometimes happens that the grand jury that finds an indictment does not know with certainty the manner or mode in which the offense for which the indictment is found was committed, but they have sufficient evidence to identify the person charged in the indictment with its commission. And so in such cases it is proper practice for the indictment to charge in separate counts different modes or manners in which the offense was committed. And if upon the trial of the case the Commonwealth can establish that the accused committed the offense in the manner and form described in any one of the counts that is sufficient, a conviction may be had. For example, if the grand jury is in doubt from the evidence before it whether the crime under investigation was committed by stabbing, shooting, beating or poisoning or by the accused as principal, accessory or aider and abetter, the indictment may charge in one count that the accused committed the crime by shooting the deceased, in another by stabbing him, in another by poisoning him, in another by beating him, and in other counts that his death was brought about by the accused in some other way, or as principal, aider and abettor or accessory. When an indictment is thus drawn, presenting sufficiently in each count every aspect of the case in which from the evidence before the grand jury the crime might have been committed, the accused can not say that the indictment did not furnish him information as to the mode or manner in which the offense was committed, and he may be convicted upon evidence showing his guilt under any of the counts.

In this case, the grand jury presumably, and we might say from the evidence introduced on the trial, certainly, had before it evidence showing (1) that Charlie Carroll came to his death by gun shot wounds, but the evidence did not show by whose hands these wounds were inflicted, (2) evidence showing that the appellant, Anderson, was present as one of the company of midnight ruffians that were engaged in an unlawful act at the time and place he was killed; (3) that some one of the persons so engaged in this unlawful act committed the crime, but which one of them was unknown, (4) that

the appellant was either the perpetrator of the deed or was present aiding and assisting in its commission, (5) or, he was a member of the band of conspirators, one of whom while engaged in the conspiracy committed the crime. Having this information, the grand jury properly charged in separate counts the different modes and manners in which the appellant was a party to the commission of the crime. If he shot and killed Charlie Carroll, or if he was present aiding and abetting the person who did kill him, or if he was a member of the band of persons who were engaged in some unlawful and felonious undertaking in the execution of which Charlie Carroll was killed, or if he was a member of a conspiracy formed for the purpose of killing this boy, he was guilty in the same degree and to the same extent, no matter in which one of these capacities he was a party or actor. Therefore, the court did not err in overruling the demurrer to the indictment.

The evidence shows conclusively that about midnight on the 29th of March, 1910, a band of armed and disguised men went to the home of Mrs. Del Carroll, for the purpose of whipping her and other members of the family, and while she and her children, Lawson, Asa, Ella and Charlie were asleep, these men, or some of them, with force and violence entered her house; and when the inmates were aroused from their sleep, Charlie, a boy of thirteen years, ran in his fright out the back door, and when he had gotten a few feet from the house and was running, he was shot in the back by some one of the men and from the effects of the wounds received died early the following morning. After he had been shot, they took Del Carroll, her son, Lawson, 23 years of age, and her daughter, Ella, about 16 years old, out in the yard, and beat them severely with hickory switches. While they were whipping these people, or preparing to do so, the moans and cries of Charlie attracted the attention of some of the band, and he was carried by one of them—the evidence does not disclose who, from the yard into the house and thrown on the bed. After these men had shot and killed this boy, and whipped the other members of the family they left the premises. The appellant, Anderson, lived a few miles from the Carrolls, and was well known to all the members of the family, and three of them testified that they recognized him distinctly. Other witnesses testify that they

saw him in the night going in the direction of the Carroll home. His defense was an alibi. He testified, and was corroborated by others, that on the night this crime, or rather 'this series of crimes, was committed. he was out on the creek fishing. But, whether he was fishing, or one of the party that killed this boy, was a question of fact for the jury, and the jury disbelieved his evidence and that of the others who supported him. Without relating further the evidence, it is sufficient to say that it was abundant to establish his guilt. There was also evidence that Del Carroll and her daughter, Ella, and her son, Lawson, were persons of bad moral character, but of course this furnished no excuse for the crime—it was competent only for the purpose of affecting 'the credibility of these persons as witnesses.

In behalf of appellant the argument is made that admitting that he was present and participating in the whipping of Del Carroll, her daughter and son, there was no evidence that he shot Charlie Carroll or that a conspiracy was formed for the purpose of injuring him or for any other purpose or that he was killed pursuant to any conspiracy. It is true there is no evidence of any conspiracy beyond the fact that this band of men were together at the Carroll home at the time, but evidence that a band of men assembled together at such a time and place as these men were is of itself sufficient evidence that their assembling was pursuant to an agreement or understanding previously entered into. It would be folly to say that a band of armed and disguised men, assembled by accident at the time and place these men did. That their meeting was the result of concert and conspiracy there can be no doubt. There are cases of course in which the mere meeting of persons, who afterwards act in concert in the commission of some unlawful deed, would not in itself be sufficient evidence that they met in pursuance of a conspiracy previously formed or that the execution of the unlawful deed was the result of a conspiracy and cases in which it would be necessary to show by direct or circumstantial evidence that a conspiracy to do the unlawful act was previously entered into. Gambrell v. Commonwealth, 130 Ky., 513. But, in cases like the one we are considering, evidence of a previous arrangement or agreement to be the unlawful act, although competent, would be entirely unnecessary. Whether the shooting of Charlie Carroll

was a part of a conspiracy, or in the contemplation of the conspirators, is not shown. And so it is said that if it be assumed that appellant and the others went to the Carroll house for the purpose of chastising Del Carroll and some of her children, the shooting and killing of Charlie Carroll was entirely foreign to the purpose of the conspiracy, was not in the contemplation of the conspirators, and appellant can not be punished for his death in the absence of evidence that he fired the fatal shot or aided, assisted, encouraged or advised the person who did. It does not seem necessary in disposing of this case to enter into a discussion of what acts committed outside the scope of the conspiracy by one conspirator in the course of the conspiracy the others will be liable for or, to undertake to define the responsibility that attaches to all for the act of one of the conspirators that was not the natural or reasonable consequence of executing the purpose of the conspiracy. Section 1241a, of the Kentucky Statutes, provides:

"If any two or more persons shall confederate or band themselves together for the purpose of intimidating, alarming, disturbing or injuring any person or persons * * * or to do any felonious act, they or either of them shall be deemed guilty of a felony and upon conviction shall be confined in the penitentiary not less than one nor more than five years."

So that, appellant and his confederates, even if Charlie Carroll had not been killed, would have been guilty of felony. It is true it is not shown that the conspirators intended to harm or molest him. What their intention as to him was, the evidence fails to disclose, but, as they were engaged in a felonious act and had assembled for the purpose of whipping several members of the family, the shooting of one of the family while attempting to escape may fairly be said to have been embraced within the purpose of the conspiracy, even if it should be limited to the purpose of administering chastisement to the family, as in the accomplishment of this end it may well be presumed the conspirators did not wish any of the family to escape. It is also entirely probable that when this boy started to run the conspirators did not know which member of the family it was. They may have thought it was one of the other members of the family that they had gone there for the purpose

of whipping, and so believing fired the shot. Perhaps they intended to frighten and not kill. But, if they supposed that he was some other member of the family, or killed when they only intended to frighten, the guilt is the same, because if they shot and killed Charlie, thinking it was Lawson, the crime would be murder; and so it would be if they shot to frighten and not kill.

The instructions do not correctly state the law of the case. One criticism of the instructions is that they do not properly give the law of self-defense as applied to the person who did the shooting; but, it was not necessary that any instruction upon the subject of self-defense should have been given. There is no fact or circumstance in the record upon which to base an instruction upon the subject of self-defense. It has been written time and again that instructions should not be given unless they present some theory of the case that is supported by evidence, and there is no conceivable theory of this case upon which an instruction on the law of self-defense would be justifiable. Bast v. Commonwealth, 124 Ky., 747. Another criticism of instruction No. 1, is that it fails to advise the jury that appellant could not be found guilty of murder in aiding or abetting in the crime unless he acted willfully and with malice aforethought. This criticism is well founded. Mickey v. Commonwealth, 9 Bush, 593. But the omission of these words was not prejudicial error, because the fact of appellant's presence when the crime was committed under the circumstances related was in itself conclusive evidence that his acts were willful and malicious.

Instruction No. 2 told the jury in substance that if they believed from the evidence beyond a reasonable doubt that appellant and the other accused went forth armed and disguised in pursuance to a conspiracy formed for the purpose of whipping Del Carroll and others, and that in furtherance of such conspiracy one of them shot and killed Charlie Carroll, they should find the accused guilty. The objection to this instruction is that appellant may have been convicted under it although he might not have known anything of the intention to kill Carroll or have taken any part in the murder. But if, as stated in the instructions appellant and the others armed and disguised themselves for the purpose of whipping Del Carroll and other members of her

family, each and all of them engaged in the conspiracy for this purpose might be punished for the murder of Charlie Carroll, and for this reason it was not necessay to give instruction No. 5, offered by counsel for the appellant.

In short, when the Commonwealth introduced evidence sufficient to show that appellant and the other conspirators were present, armed and disguised, at the house of Del Carroll for the purpose of whipping her and other members of her family, each and all of them by reason of this fact were liable for the killing of Charlie Carroll, without any evidence as to which one of them fired the fatal shot. His murder was cruel and absolutely indefensible from every standpoint; and, although the instructions did not present correctly the law of the case, they did not under the evidence prejudice the substantial rights of the accused, and the judgment is affirmed.