## Dockery v. Commonwealth.

(Decided March 8, 1927.)

## Appeal from Harlan Circuit Court.

1. Homicide—Witness Who First Arrived Could Testify Concerning Condition of Premises and Bodies in House Where Homicide Occurred.—In prosecution for homicide, testimony of first witness who arrived at house regarding condiiton of premises and bodies of two persons killed and of presence of children in bed with woman first killed, held admissible, in prosecution for murder of woman killed immediately thereafter, to show defendant's motive for homicide.

2. Homicide—Evidence Tending to Show Defendant Killed Husband of Woman Murdered Held Admissible to Prove Motive, Where Part of Continuous Transaction.—In prosecution for homicide, where defendant shot and killed two women in house and was suspected of killing husband of one of women, admitting evidence of tracks from porch to place where husband might have been shot and of time when husband was accustomed to come home held not error, though prosecution was for murder of one of women, entire matter being continuous transaction without any intermission and admissible to show motive.

3. Homicide—Admitting Evidence that Defendant Killed Husband of Woman Murdered Held Not to Require Instruction on Self-Defense Under Evidence.—In prosecution for murder of one of two women killed practically simultaneously, defendant held not entitled to instruction on self-defense, though evidence was introduced tending to show defendant had also, as part of same transaction, killed husband of one of women when he was coming home; there being no evidence that homicide of husband was committed in self-defense.

4. Criminal Law—Rejecting Testimony as to Mental Condition of Defendant Held Harmless, Where Witness Later Described Conduct.—In prosecution for murder, refusal to permit defendant's grandmother to testify as to mental condition held not ground for reversal, where grandmother, who had not then qualified, later described defendant's conduct and detailed all her knowledge on the subject of his insanity.

FORESTER & CARTER for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHAS. F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS— Affirming.

Mrs. Elizabeth Howard, J. C. Jenkins and Mrs. J. C. Jenkins were assassinated at their home in the village

of Loyal, Ky., on Friday night, March 26, 1926. Following this, Hascue Dockery was convicted of the murder of Mrs. Elizabeth Howard and his punishment fixed at death. From that judgment this appeal is prosecuted.

The Howard and Jenkins families occupied double apartments, each of which included a front bedroom, dining room and kitchen in the back, being separated by a central hall, with a door at each end. Jenkins was a miner on night duty and usually reached home about midnight. His family consisted of a wife, a son Charley, 11 years of age, and three smaller children. Bradley Howard was a railroad engineer and on duty at this time. His family consisted of a wife, Elizabeth.

Appellant is quite young. He had married a girl raised in the home of Joe Jenkins. He and his wife were estranged and she had returned to Jenkins' home several weeks prior to the tragedy. That night Mrs. Howard and Mrs. Dockery slept in the dining room of the Jenkins apartment. Mrs. Jenkins and her three small children were in a bed next to the window in the front room, and Charley Jenkins, the only eye-witness, while quite young, testifies clearly and intelligently that he occupied a bed in the same room on the side next to the dining room; that he was awakened by a rifle shot outside and almost immediately thereafter recognized Hascue Dockery on the outside of the house just beyond his mother's bed; she raised on her elbow and Dockery fired at her, killing her instantly. A lamp was burning in the room and Mrs. Howard and Mrs. Dockery ran in from the dining room screaming, when Dockery fired at Mrs. Howard, killing her also, and extinguishing the light. He then ran around the house, knocked open the rear door of the hall, came through the kitchen and dining room into the front room and relighted the lamp. His wife asked him if he was going to kill her, and he told her no, and embraced her. He then sat down and ejected the shells from his gun, dropping one or two on the floor. Charley picked up one of the cartridges and Dockery menaced him and he ran pursued by Dockery, but escaped to a neighbor's house and gave the alarm; an hour or two later the sheriffs arrived. They found J. C. Jenkins' body lying partly on the front porch within a few feet of his wife's body. Mrs. Jenkins' body was in the bed; the little children still with her. Mrs. Howard's body was lying at the door leading into the dining room, all of the bodies bearing evidence of having been shot with a high powered

rifle. When the first one arrived the door was locked, but he was admitted by Mrs. Dockery, who handed him a rifle and pistol which were shown by other witnesses to be the property of appellant. He also found cartridges belonging to the gun on the outside of the house and was given two or three by Mrs. Dockery.

Dockery was a railroad laborer about twenty-one years of age. He had been over to Virginia a few days previous and returned with the rifle in question and had purchased high powered cartridges the day before. On Thursday morning at about 2:30 o'clock he came to a block house occupied by John Howard carrying this gun and spent the remainder of the night. He was again at his office on Friday evening before the tragedy and left carrying the gun and returned again about 2:30 in the morning without the gun and was permitted to stay the remainder of the night, leaving about 6:30 o'clock. The officers got on his trail at this place and followed him up the mountain in the direction of Virginia and arrested him. They testify that he said: "He done it all but didn't do as much as he aimed to do; he aimed to kill the whole family and himself."

The defense was insanity, and defendant did not testify. It was shown that he had always been eccentric and of a nervous and cowardly disposition. A number of witnesses testified that he was deficient in mentality; that he was accustomed to carrying rocks and bolt nuts in his pocket; was afraid to sleep in a room by himself; would throw at birds and other objects in boyish sort of way, and after the estrangement with his wife was moody and despondent and indicated a disposition to commit suicide. At one time he told an associate that he had killed his wife and hidden her body in a loft; he also spoke of walking in front of a moving engine and made similar other remarks. This defense was fully submitted to the jury by instructions which are not criticised.

It is urged that the court erred in permitting the witnesses who first arrived at the house to describe in detail the condition of the premises and of the bodies, as well as to tell of the presence of the little children found in the bed with Mrs. Jenkins' body. We do not think this criticism well founded. True the defendant was on trial only for the murder of Elizabeth Howard, but presumably the premises were as he left them and in the condition he placed them, hence all of this evidence was competent as showing a motive for the homicide.

It is said, however, that no one saw J. C. Jenkins shot, and that if appellant had been on trial for killing J. C. Jenkins he would have been entitled to a' self-defense instruction; that as there was an eye-witness to the shooting of Mrs. Howard and a self-defense instruction was not available it was improper to permit evidence of tracks a short distance from the porch at a place from which J. C. Jenkins may have been shot or to permit evidence of the time at which J. C. Jenkins was accustomed to coming home, but that if introduced a self-defense instruction should have been given. We cannot assent to this. It is true that the killing of J. C. Jenkins constituted a separate crime, but the entire matter was a continuous transaction without any intermission, and the intent and purpose of and motive for all the shooting were so closely interwoven with that of each as to be inseparable, hence this evidence does not fall within the rule of criminal law excluding evidence of other offenses. Garman v. Com., 183 Ky. 462; Roberson's Criminal Law & Procedure, sec. 242; Morse v. Com., 129 Ky. 294; Underhill's Criminal Evidence, page 107. Nor does the admission of this evidence entitle appellant to a self-defense instruction in this case even if it should be admitted that such instruction would be proper on a charge of killing J. C. Jenkins, as there can be no pretense of such necessity under the facts in this case.

Complaint is also made that appellant's grandmother was not permitted to testify as to the condition of his mind. At the time this question was asked the witness did not qualify to answer it, but later did describe his conduct and detail all she knew on the question, hence the court's ruling on the objection to the question did not affect his substantial rights.

Wherefore, perceiving no error prejudicial to appellant's substantial rights, the judgment is affirmed.

Whole court sitting.