## McGee v. Commonwealth.

(Decided Nov. 11, 1932.)

446

LELAND H. LOGAN and SAMUEL M. ROSENSTEIN for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

At the January term of the McCracken circuit court, the grand jury indicted the appellant, Sam McGee, for the willful murder in that county of Charles Clark.

In the following February, upon his trial therefor, the jury returned a verdict of guilty of murder as charged, and fixed his punishment at death, upon which judgment was pronounced.

On March 21 next following, the defendant filed his motion and grounds for a new trial, in which he assigned seven grounds for reversal, and in support of his said motion filed his affidavit, undertaking to show thereby that he had not received a fair trial.

A new trial was refused, and he now prosecutes

this appeal, seeking a reversal of the judgment, complaining that the following alleged errors were committed by the trial court: (1) That the court erred in permitting incompetent evidence to be introduced by the commonwealth; (2) that the court erred in failing to give the whole law of the case; (3) that the court erred in overruling the demurrer to the indictment; and (4) that the verdict is contrary to the law and to the evidence.

Before considering any of these objections, and to assist in clearer understanding of our discussion of them, a brief statement of the facts is necessary.

The facts as disclosed by the record show that Charles Clark was shot and killed in the city of Paducah, McCracken county, Kentucky, on the evening of January 17, 1931; that he was shot between 7 and 8 o'clock as he walked with his father-in-law, George Rock, along North Twelfth street of said city dying almost immediately; that the shooting occurred there near the home of George M. Rock, where the deceased and his wife had gone that evening to visit her parents; that at about 7:30, George M. Rock and his son-in-law, Charles Clark, left Mr. Rock's residence to go to a barber shop; that, when they had gone about 150 to 300 feet from Mr. Rock's residence, they were accosted by the appellant, Sam McGee, and Milton Risby, who demanded that they "stick 'em up." Mr. Rock, realizing that they were about to be robbed, resisted, when the appellant, McGee, and Risby immediately opened fire on them. In the holdup, Charles Clark was shot near the heart and died immediately, and Mr. Rock received two serious gunshot wounds, one in the shoulder and one in the side. Mr. Rock, being armed returned the fire, killing Milton Risby. The appellant, McGee, escaped, and was arrested a few hours later.

By the commonwealth's evidence, it is shown that these two negroes, the appellant, McGee, and Risby, were but a short while before seen about one-half a block from where the difficulty occurred, and that they were armed, and that they had robbed three different men in that neighborhood within an hour of the attempted robbery and killing of the decedent.

One Nathan Blakley testified that he runs a barbeque stand on Jones street near the place where the

killing in evidence took place, and that about 6 o'clock of the evening of January 17, McGee and Risby, both of whom he knew, were at his place of business, when he noticed that both were armed with the pistols later identified by Blakeley as the ones shown upon the trial to have been used by McGee and Risby upon the occasion of the killing of decedent, Charles Clark. Blakeley further states that they, after stopping at his place a short while, left it together.

It is also shown by the commonwealth witness, F. A. Jennings, a crossing flagman, whose testimony was admitted without objection, that upon this same evening, at about 6:15, while he was returning from work, the appellant and another colored man held him up and searched and robbed him in this neighborhood, which he detailed, and identified the appellant, McGee, as one of the negroes who then robbed him.

Also Lee Kepner testified that on the night of the killing he and his brother, Charles Kepner, started to town at about 6:20 o'clock, and that just as they got to Ninth and Harrison streets, two fellows showed up in front of them and said, "Stick 'em up"; that they put up their hands and were marched across the street into an alley, where they were made to lie flat on their stomachs and were robbed; that he was robbed of a signet ring, which they found on the person of the deceased Milton Risby, and witness also identified at the trial the defendant, McGee, and the deceased Risby as the men who had robbed him and his brother, Charles Kepner, who also likewise testified to the fact of their robbery by these negroes, Risby and McGee.

Lee Kepner's testimony as to how and where he and his brother had been robbed had been given without objection thereto, and only when he began to testify as to his later telling a watchman about the robbery did counsel object to that testimony, but as to which no ruling was made by the court nor exception taken by the appellant.

The appellant, McGee, did not tesify in his own behalf, nor did he inroduce any proof whatsoever in his defense.

From the record, it further appears that upon the completion of the trial, and after a new trial was refused upon appellant's motion and grounds therefor,

the attorneys appointed by the trial court to defend McGee, at the April term, 1931, entered motion that their names be stricken from the record as attorneys for appellant, which was sustained by the court, and thereafter, upon the record of the trial being filed in this court, Leland H. Logan and Samuel M. Rosenstein, attorneys of Frankfort, were by this court appointed as counsel to brief the case for appellant, and we feel that they for their services here rendered the defendant, both in their forceful oral argument made before us in his behalf, as well as in the studious and excellent briefs submitted by them, are deserving of the commendation of this court for the fidelity, skill and earnestness with which they have gratuitously performed the duty and trust assumed under their appointment.

We will now address ourselves to the first ground of complaint made, that appellant was prejudicially injured through the court's allowing the introduction of alleged incompetent evidence, consisting of the admitted testimony of the commonwealth's witnesses Jennings and Lee and Charles Kepner as to the robbery of them by appellant McGee and his associate, Milton Risby, a short while prior to and in the neighborhood of their attempted robbery and killing of the decedent Charles Clark, and also further complaining of the court's alleged error in permitting Mr. Rock, the only eyewitness to the shooting of his son-in-law, Charles Clark, by appellant, McGee, to testify upon the grounds that the defendant, upon entering his plea of "not guilty" to the charge contained in the indictment had by counsel moved the court that all witnesses be put under rule, which was so ordered, but that notwithstanding such order, the witness Rock had in violation of the rule, remained in the court room and in the hearing of other witnesses while they testified for the commonwealth, and thereafter had been allowed to testify.

Disposing of these objections in the order made, it may be conceded that the general rule is as contended for by appellant, that evidence of other crimes is not admissible against the defendant while under trial for the particular offense charged, "except where proof of such other crimes is necessary to show, (1) the identity of the accused as the person who com-

mitted the crime proved, (2) the guilty knowledge, (3) particular criminal intent, (4) malice or motive and (5) that the crime of which he is accused and for which he is being tried is part of a plan or system of criminal actions.'' The complained of evidence in the case at bar was as to the two robberies committed within an hour of the time appellant killed the decedent, Clark, while endeavoring to rob him and his companion, Mr. Rock, in the same manner that he had robbed Jennings and the two Kepners. We are of the opinion that this evidence was properly admitted as coming within the exceptions to the rule stated, supra, to identify the appellant as one of the two who had engaged in this series of robberies committed but a short while before their later attempted robbery which resulted in the death of Clark and to show the crime of which McGee was accused was a part of a plan or system of criminal actions on the part of McGee and his confederate Risby.

No seasonable objections were offered by counsel for appellant to the admission of this evidence, and even had there been, we are of the opinion the same was properly admissible as coming within the exceptions, supra, and as coming within and under the ruling of his court in the cases of Powers v. Commonwealth, 197 Ky. 154, 246 S. W. 436, Moore v. Commonwealth, 188 Ky. 505, 222 S. W. 934, 936, Music v. Commonwealth, 186 Ky. 45, 216 S. W. 116, and Crenshaw v. Commonwealth, 227 Ky. 223, 12 S. W. (2d) 336.

In the Moore Case, supra, the appellant was charged with house breaking, and the court permitted the commonwealth to introduce evidence showing that two other robberies had been committed in the immediate neighborhood where it was alleged that the appellant had robbed the home of one Foster. On appeal, it was argued that the admission of evidence of the other robberies was incompetent and prejudicial. The court, in holding such contention without merit, said:

"The crimes were all committed, in point of time, within the space of an hour and in the immediate neighborhood of each other, showing a systematic plan of criminal actions, and all fairly attributable to the same person. The evidence was relevant and competent, as conducing to prove the identity

of the perpetrator of the crime at Foster's, with that at Hutchen's, whom the evidence conduced to prove was the accused.''

In the very recent case of Dewberry v. Commonwealth, 241 Ky. 726, 44 S. W. (2d) 1076, the commonwealth attempted to introduce evidence of the commission of crimes by appellant and his associates on their way from Louisville to Elizabethtown. The trial court sustained objections to such evidence, but, upon a review of this case by this court, it was held that evidence of the commission of these crimes was competent and should have been admitted, as was also held as to the admission of like evidence in the case of Rodgers v. Commonwealth, 241 Ky. 593, 44 S. W. (2d) 599.

Especially is appellant's contention as to this without merit here when the said witnesses were upon the trial below permitted to testify 'without objection thereto.

Now addressing ourselves to the next objection, that the court prejudicially erred in permitting George Rock to testify after defendant's motion to exclude witness from the courtroom had been sustained and this witness had failed to comply with the rule: Appellant claims that this was a substantial violation of section 601 of the Civil Code of Practice, and was prejudicial to appellant and an abuse of judicial discretion on the part of the trial court.

We deem this contention to be also without merit, inasmuch at it has been repeatedly decided by this court that the cited Code provision is directory rather than mandatory, thus leaving it within the sound discretion of the trial court to permit a witness who has remained in the courtroom during the introduction of evidence to testify, notwithstanding the court has previously sustained the motion of either party to exclude witnesses, and that such ruling by the court will not be disturbed unless by the record it appears that the court has abused its discretion in so permitting such witness to testify.

In the instant case, Rock was the only eyewitness to the charged killing by McGee of his son-in-law, Charles Clark, and therefore it could not reasonably appear that his evidence would be influenced in any way

by the evidence of other witnesses previously testifying as to other matters and offenses, and, even were we in doubt as to this, we are made certain as to the propriety of our holding through the fact that appellant's complaint as to this alleged error of the trial court in permitting Rock to testify is not available to the appellant as a ground for reversal of the judgment against him, since it was not relied on by him in his motion and grounds for a new trial. Whitson v. Commonwealth, 197 Ky. 745, 247 S. W. 979; Render v. Commonwealth, 206 Ky. 1, 266 S. W. 914.

We now turn our attention to appellant's second complaint, that the court erred in failing to give the whole law of the case in two respects: (1) That the court erred, after admitting evidence of other crimes, in not instructing the jury for what purpose such evidence might be considered; and (2) that the court erred in failing to give the manslaughter and self-defense instruction. We are of the opinion that neither of these assigned objections is meritorious.

As to the first, we have, for the reasons indicated, supra, concluded that the court did not err in admitting the complained of evidence of other crimes under the facts in this case, and now further conclude that, if the appellant desired an admonition to be given by the court to the jury as to the purpose and extent to which such evidence might be considered by it, it was the duty of the appellant to ask for such special admonition thereon, from which it follows that, having failed to seasonably, or at all, make such request, the appellant waived his right to complain because of its not being given. Keller et al. v. Commonwealth, 230 Ky. 815, 20 S. W. (2d) 998; Eaton v. Commonwealth, 230 Ky. 250, 19 S. W. (2d) 218; McCarty v. Commonwealth, 216 Ky. 110, 287 S. W. 363. The rule to like effect is thus stated in 16 Corpus Juris, 1058 as follows:

> "A failure to give a particular instruction on the rules regulating the admission and the exclusion of evidence, and on its character, weight, effect, corroboration, or impeachment, is not error where such an instruction is not specially requested. Thus, it has been held that, in the absence of a proper request therefor, it is not error to fail to give an instruction limiting the purpose for which particular evidence may be considered."

As to the second complaint that the instructions were erroneous in failing to submit to the jury a manslaughter and self-defense instruction, a consideration of the evidence disclosed by the record very conclusively convinces us that appellant's contention is again without merit, for the reason that there was no evidence heard in this case upon which there could be based or which would authorize a self-defense or manslaughter instruction.

In the case of Cook v. Commonwealth, 232 Ky. 613, 24 S. W. (2d) 269, 273, the court said:

"One is not entitled to an instruction on self-defense unless the evidence justifies it. We have affirmed death sentences where no self-defense instructions were given. Ferrell v. Commonwealth, 176 Ky. 330, 195 S. W. 495; Lawson v. Commonwealth, 152 Ky. 113, 153 S. W. 56; Slagel v. Commonwealth, 81 Ky. 485; Dockery v. Commonwealth, 218 Ky. 703, 292 S. W. 336; Fowler v. Commonwealth, 13 Ky. Ops. 853."

And further, in Kirk v. Commonwealth, 192 Ky. 460, 233 S. W. 1060, 1064, the court in announcing this rule said:

"The case comes within the rule announced in Bast v. Commonwealth, 124 Ky. 747, 99 S. W. 978, 30 Ky. Law Rep. 967 and later cases, viz. that where the facts and circumstances in evidence are so convincing as to preclude any other theory of the homicide than that of murder, instructions on manslaughter or self-defense should not be given."
To like effect, see Frasure v. Commonwealth, 169 Ky. 620, 185 S. W. 146.

The appellant did not testify in his own defense, and did not offer any evidence.

The evidence of the commonwealth as given by its witness Mr. Rock was entirely to the effect that the appellant murdered the decedent, Charles Clark, by shooting him near the heart upon resistance being offered to the attempted robbery by appellant and his confederate, Risby, of the decedent, Charles Clark, and said witness, when told by them to "stick 'em up."

We will next consider appellant's objection No. 3, that the court erred in overruling the demurrer to the indictment. A reading of the indictment shows the

same to contain three counts. It is criticised on the theory that by these it charges two offenses. This contention is plainly without merit, as a consideration of the three counts employed in the indictment clearly shows that each count charges but the one offense of murdering the deceased, Clark, while the appellant was, either as principal or as aiding or abetting his confederate, Milton Risby, acting pursuant to a conspiracy made and had between the appellant and his confederate, Milton Risby, to commit the crime of robbery upon the persons of George Rock and Charles Clark. We are of the opinion that the indictment as drawn fully meets the requirements of the applicable provisions of the Criminal Code of Practice (section 122 et seq.).

Further, the question presented by this objection was before this court in the case of Anderson v. Commonwealth, 144 Ky. 215, 137 S. W. 1063, 1065, where it was claimed on appeal that the indictment charged two offenses, and this court, in denying the contention, said:

"If he shot and killed Charlie Carroll, or if he was present aiding and abetting the person who did kill him, or if he was a member of the band of persons who were engaged in some unlawful and felonious undertaking in the execution of which Charlie Carroll was killed, or if he was a member of a conspiracy formed for the purpose of killing this boy, he was guilty in the same degree and to the same extent, no matter in which one of these capacities he was a party or actor. Therefore, the court did not err in overruling the demurrer to the indictment."

Again appellant, as his next and final objection to the judgment of conviction, insists that the verdict is contrary to the law and evidence.

Counsel for appellant, in insisting upon and arguing this alleged ground of error, state that the appellant did not have a fair and impartial trial by reason of the high state of feeling and the tense atmosphere of the courtroom under which and where his trial was held. They state that public feeling was so strong against appellant that the trial court called upon the Governor of the commonwealth to direct soldiers to be in attendance at the trial, to the end that "the orderly processes of the court might not be interfered with by

a mob," and that soldiers were stationed in and about the courthouse and about the judge's stand and in the courtroom during the trial of the case; further, that the record shows that proper motions, objections, and exceptions were not taken to protect appellant's interests.

The record fails to disclose that such conditions prevailed. No showing is made by the record that the appellant's rights were prejudiced by the presence of troops, even if there at the time of his trial, or that public feeling against appellant was there so strong or hostile that he could not have a fair trial. The record does not disclose that any motion was made either for a continuance or for a change of venue, nor was any motion and grounds for a new trial based upon the existence of such alleged conditions, if they did exist, filed, nor do we find where the existence of such conditions appears anywhere in the record except in the affidavit of defendant made in support of his motion and grounds for a new trial, which assigned other and different alleged grounds of error.

In the recent case of Dewberry v. Commonwealth, 241 Ky. 726, 44 S. W. (2d) 1076, 1081, it was urged on appeal that the court erred in failing to continue the case and that the substantial rights of appellant were prejudiced by the presence of soldiers. The court, in denying appellant's contention, said:

"The appellant, in the affidavit of his counsel filed in support of his motion and grounds for a new trial, complains of the presence of the soldiery, but nowhere, either in the motion and grounds for a new trial or bill of exceptions, does appellant rely thereon as a ground for setting aside the verdict of the jury. No complaint is made therein of the presence of the soldiers, and where there is no affirmative showing that an accused's rights were substantially prejudiced thereby, or that their presence deprived him of a fair and impartial trial, the mere fact that the soldiers were in attendance furnishes no ground for a new trial or reversal. The refusal of the court to grant a continuance or the postponement of the trial because of the presence of soldiers, or on account of local sentiment or prejudice arising from a defendant's crime, will not be disturbed by this court unless it be made to appear affirmatively by other evidence than by the affidavit of the accused or an oral statement of his

counsel that the court abused its discretion. Smith v. Commonwealth, 42 S. W. 1138, 19 Ky. Law Rep. 1073.

"One of the purposes of a bill of exceptions is the presenting to this court questions for its consideration on an appeal. This court cannot reverse a judgment in a criminal case unless for an error of law occurring on the trial and appearing in the bill of exceptions as provided in the Code of Practice."

Again, in the case of Carsons v. Commonwealth, 243 Ky. 1, 47 S. W. (2d) 997, 1001, the contention was made that appellant was entitled to a change of venue because of the condition of public sentiment in the county where appellant was tried. The court said:

"There must be evidence other than, and independent of, newspaper articles showing the condition of public sentiment in the county, and for that cause he cannot have a fair trial in the county in which the prosecution is pending; or at that term of court."

Appellant's bill of exceptions in the case at bar fails to show either the condition of public sentiment in McCracken county against the appellant or that soldiers were in attendance at the trial, and we are of the opinion that, on the authority of the cases cited supra, appellant's contention that the judgment be reversed on his affidavit and the quoted report of the Associated Press as to conditions existing in McCracken county at the time of the trial cannot now be considered or sustained by us.

Appellant's affidavit made in support of his request for a new trial did recite that on the night of his arrest he was carried from Paducah to the nearby town of Mayfield and again taken from there and lodged for safekeeping in the jail at Hopkinsville; that such precautions were observed in his behalf, looking to his proper safeguarding during the period of his imprisonment while awaiting his trial; that public feeling in Paducah was in a state of high excitement and hostility against him because of the enormity of the crime, with the commission of which he was charged, and that appellant was terrified by such alleged show of hostility to him and so frightened as to not at the time remember matters available for his defense.

The record does show that the court appointed three or four attorneys of good standing at the McCracken bar to represent the defendant in the proper presentment of his defense upon his trial, and that such attorneys were directed to visit and did visit the appellant while imprisoned at Hopkinsville to inquire of and consider with him the matter of his defense, but that their services were rejected by appellant, who refused to discuss the case with them, stating that he would employ his own counsel for such purpose.

Counsel for appellant also further urged that he be given a new trial on the grounds of alleged newly discovered evidence. In support of this claim they file affidavits wherein the affiants seek to establish an alibi for the appellant by averring that the appellant was at the time of the killing of Charles Clark, between 7 and 8 o'clock in the evening of January 17, 1931, with them in their homes in Paducah some two miles distant from the place on North Twelfth street where this murder is shown to have been committed. Such being the character of the claimed newly discovered evidence, it is evident that the same cannot be considered as evidence newly discovered by appellant since his trial, by. reason of the fact that its very nature is such that it was at the time of his trial known to the appellant whether or not he was with these alleged friends and acquaintances, the affiants, in a locality of Paducah distant from the scene and place where it is shown the murder of Charles Clark occurred, and therefore such evidence, tending to establish an alibi and the witnesses thereto were then known by him, if same at all or ever existed.

By reason of the gravity of the penalty here imposed upon the appellant for his charged murder of Charles Clark, we have attempted upon this appeal to consider with great deliberation and seriousness each and every claim advanced for the reversal of the judgment. However, the sentence imposed, even though severe, is not a matter resting within our control, but is one that has been meted out to appellant by the jury before whom his case was tried and in whose hands rested the determination of his guilt and the meting out of lawful punishment therefor. They have found the appellant guilty of the murder, with which by the indictment he was charged. It thereupon becomes our concern to here carefully consider the whole record to

458

the end of deciding whether or not the appellant is shown thereby to have received a fair and impartial trial.

Upon a careful review of this record, we find that the appellant has had such a trial, wherein no substantial right of his has been prejudiced. Having so concluded, it must follow that the judgment of the lower court should be and is affirmed.