**JOHNSON v. COMMONWEALTH.**

Court of Appeals of Kentucky.

Jan. 29, 1954.

N. E. Frey, Elkton, for appellant.

J. D. Buckman, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., H. G. Davis, Elkton, for appellee.

DUNCAN, Justice:

Appellant, seventy-five years of age, shot and killed her husband, Kelly Johnson, forty-one years of age. Upon her trial, she was convicted of voluntary manslaughter and sentenced to three years in the penitentiary. The only question on the appeal concerns the failure of the trial court to give an instruction on self-defense.

On Sunday, December 17, 1950, appellant had spent most of the day at the home of her brother-in-law, Robert Johnson. When she returned to her home, she was accompanied by Bobby Johnson, her husband's thirteen-year old nephew. It appears that deceased had been drinking and had spent most of the previous night away from home. He had promised to meet her at the home of Robert Johnson, but had failed to do so. Upon reaching her house, she found her husband sitting in front of the fire with his shoes off. Some discussion ensued concerning where he had been that day, but no serious trouble developed until later in the evening.

Appellant prepared supper while her husband milked. After supper, he undressed and went to bed. The discussion as to where he had been that day was then resumed and continued until he got up and went into another room. In a few minutes he returned and accused appellant of having been out with another man. She did not appear to be flattered by the accusation and some blows were struck. There is disagreement between appellant and Bobby Johnson, the only other eyewitness to the tragedy, as to which party was the aggressor and the extent and severity of the blows. We are not particularly concerned with the conflicts in their stories because in determining appellant's right to a self-defense instruction, we accept her account of the incidents preceding the shooting.

Appellant testified that deceased commenced the difficulty by striking her with his fist and kicking her in the back. She also related that he either hit or threatened to hit her with an iron poker. She said that she finally got away from him and went to the bed and procured a pistol which she had hidden between the mattress and springs. By that time, the attack had ended, and deceased was standing with his hands on the mantel, with his back to appellant. She pointed the pistol at him and pulled the trigger. The first time it snapped, and deceased apparently heard the sound and started to turn. Upon the second attempt, the pistol fired and the bullet passed through the fleshy part of his right arm, into the right side, through the body, and finally penetrated the heart. He died within a matter of minutes. We quote appellant's version of what occurred immediately before the shooting:

"Q. When you got the pistol, Mrs. Johnson, what was Kelly doing then? A. Standing with his back to me, hands up on the mantelpiece, talking to Bobby.

"Q. Did he then make any movements towards you and at you? A. I don't really recollect.

"Q. And at the time that he had his hands on the mantelpiece, with his back turned to you, you went and got that gun? A. I sure did.

"Q. You reached your hand in between the mattress and the springs and pulled it out? A. Yes sir.

"Q. And turned and you pointed that gun at Kelly? A. I sure did.

"Q. At that time he was still at the mantelpiece, wasn't he? A. Yes sir.

"Q. And he had his back to you, didn't he? A. Yes sir.

"Q. What you were thinking about at that time was shooting Kelly Johnson, your husband, wasn't it? A. I did not think I'd hit him, I was aiming to shoot at him.

"Q. I said you were thinking about shooting him? A. I said I was aiming to shoot at him.

"Q. And you took that gun and you pointed it at him, didn't you? A. Yes sir.

"Q. But when the gun snapped and you knew that it had snapped, you pulled the trigger again? A. I sure did, before he turned round. I was afraid that he was going to get me.

"Q. You were standing across the room from him at that time? A. Yes sir.

"Q. You had the gun pointed at him at that time? A. Sure did.

"Q. You had already pulled the trigger and snapped it, and the gun had snapped once at that time, and then it was that you were afraid that he was going to get you? A. Yes.

"Q. What, if anything, did he have in his hands at that time? A. I don't know what he had."

■■ From the foregoing testimony, it is apparent that the appellant was in no danger at the time she fired the shot which killed her husband. His assault, if any, had ended and he was standing across the room in a position which precluded any possibility of immediate danger to her. He was neither saying nor doing anything from which she could have inferred that he in-tended further harm to her. Under the circumstances, we do not think an instruction on self-defense was warranted. An instruction on self-defense is not required where there is no evidence, direct or circumstantial, upon which it can be based. McGee v. Commonwealth, 246 Ky. 445, 55 S.W.2d 382; Anderson v. Commonwealth, 288 Ky. 576, 156 S.W.2d 860; Witt v. Commonwealth, 305 Ky. 31, 202 S.W.2d 612.

The judgment is affirmed.